DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal from the Huron County Court of Common Pleas. That court declared a mistrial sua sponte after receiving a note from the jury which alleged that one of its members had acknowledged that he or she could not hear the trial proceedings and jury deliberations.
Subsequently, the trial court denied appellant's motion to dismiss the indictment on double jeopardy grounds. Appellant then entered a no contest plea to one count of possession of marijuana, a violation of R.C. 2925.11
(A) and a third degree felony.
Appellant, Edwardo Gonzalez, appeals from the order declaring a mistrial and from the judgment overruling his motion to dismiss the indictment, and raises the following sole assignment of error:
 "THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSES OF THE U.S. AND OHIO CONSTITUTIONS WHEN IT DENIED HIS MOTION FOR DISMISSAL OF THE INDICTMENT (MOTION HEARING TRANSCRIPT, PP. 18-26), AFTER SUA SPONTE DECLARING A MISTRIAL ON THE BASIS OF AN UNSIGNED NOTE FROM THE JURY, WHICH NOTE THE COURT RECEIVED AFTER THE JURY HAD COMMENCED ITS DELIBERATIONS, AND ABOUT WHICH THE COURT MADE NO INQUIRY OF THE JURY BEFORE DISCHARGING IT (TRIAL TRANSCRIPT, VOL. II, PP. 392-397).
In June 1998, United States postal officials detected a package containing illegal drugs addressed to "Jim Brite" at "107 North First Street," in Willard, Ohio. Postal officials arranged for surveillance of delivery of the package to appellant's residence at 107 First Street.
Shortly after a woman signed for the package at that residence, surveillance officers saw appellant leave the apartment. He walked around the back, where someone passed the package to him through a window. Appellant placed the package in the trunk of a car. Officers stopped appellant when he started to drive away. Appellant denied knowledge of the contents of the unopened box and stated he was returning the package to the post office.
On September 22, 1998, the matter proceeded to jury trial on the sole charge of possession of drugs. During voir dire, one prospective juror indicated that he had a fifty percent hearing loss and had difficulty hearing the attorneys, the court, and other jurors unless they spoke loudly. The juror assured the court that he would raise his hand if he did not hear something. The juror was vocal about his beliefs that marijuana should be legalized. However, he told the court he would apply the law as the court directed despite his views.
After the trial court dismissed the alternate juror, the jury began deliberations at approximately 2:00 p.m. the following day. The jury interrupted deliberations to first ask the court to replay an audiotape recording of the postal inspector's delivery of the package. Later, the jury requested clarification of an instruction.
Although the time is not included in the record, the trial court reconvened court a third time with only the attorneys and appellant present. The judge indicated he had received "a note from the jury" which said:
 "can a juror be removed because he cannot hear us when we are discussing the issues[,] and he admits he cannot hear us and could not hear all the testimony."
Appellee, the state of Ohio, asked that the alternate juror be recalled to substitute for the hearing-impaired juror. Appellant's counsel expressed concern about substituting the alternate after deliberations started. He also questioned whether the hearing problem was something that could be resolved if it was just a matter of the tape recording. Indicating he did not know what position to take, appellant's counsel suggested, "perhaps some inquiry of the jury might be appropriate to make."
After a recess to research the issues, the trial court again reconvened with counsel. Appellant's attorney declined to make a motion for mistrial because it would waive double jeopardy. Appellant objected to substituting the alternate juror. Appellant asked the court to treat this matter:
 "as if the note had * * * announced a deadlock[;] usually before a mistrial is granted upon a deadlock, the Court makes some inquiry to whether it's possible to reach a verdict. We would respectfully submit that this would be the appropriate thing to do at this time."
Before the jury returned, the trial court announced its decision to declare a mistrial to appellant and the attorneys, stating:
 "Under Ohio Revised Code 2945.36 the trial court may discharge a jury without prejudice to the prosecution for the sickness or corruption of a juror or other accident or calamity. In this particular case the jury has communicated to the trial court — the court that one of its members has said to the others [sic] jurors that he cannot hear some of their deliberation and that he could not hear all of the testimony.
 "Given that statement from the jury, I would find that that falls under the category of a sickness or corruption of a juror, or other accident or calamity, and therefore, despite the fact that the defendant apparently is not consenting to a mistrial or requesting one, the Court's going to declare a mistrial and find that the mistrial is without prejudice to the prosecution to retry the case."
The trial court then called the jury back into the courtroom. It repeated its decision to the jury, stating:
 "Ladies and Gentlemen of the Jury, we've received your communication and question as to whether or not a juror could be removed because he could not hear when you were discussing the issues and because he admits that he could not hear you and could not hear all of the testimony. Based on that communication to the Court, the Court has declared a mistrial in the case.
 "I know that you've been valiant in trying to deliberate this case and to reach a verdict in the case, but because of that concern about whether or not one of your members would have heard all of the testimony and because whether or not he can participate meaningfully in the deliberations, the Court finds that a mistrial must be declared."
On November 10, 1998, appellant moved to dismiss the case with prejudice arguing that because the case had already been tried to a jury, a retrial would violate the double jeopardy provisions of the United States and Ohio Constitutions. At an oral argument that same day, the parties raised arguments to the trial court that are essentially identical to those raised on appeal.
The trial court denied the motion. The court announced on the record that there was no question that the note, although unsigned, was indeed from the jury as it had been presented to the court's bailiff for delivery to the judge. The trial court decided that defendant's and society's interest in having a juror meaningfully participate in deliberations outweighed appellant's right to have the charges decided by that particular jury. The trial court referred to this court's decision in State v. Sabbah
(1982), 13 Ohio App.3d 124, 139 as authority for its conclusion that it did not need to inquire of the jury before acting on a note from the jury.
On January 13, 1999, appellant entered a plea of no contest to the sole count of the indictment. On January 28, the trial court sentenced appellant to serve twelve months of incarceration. The sentence was stayed pending appeal.
Appellant's sole assignment of error requires us to consider two issues:
 (1) Is a trial court obligated to inquire whether there is either manifest necessity or statutory grounds for a mistrial when it receives information alleging that one juror was too physically impaired to meaningfully participate in deliberations before declaring a mistrial sua sponte?
 (2) When a trial court declares a mistrial in such circumstances, despite appellant's request for further investigation and lack of consent, does double jeopardy prevent a retrial?
A trial court has discretion to declare a mistrial where (1) "manifest necessity" or a "high degree of necessity" dictate; (2) the trial judge has no reasonable alternative to declaring a mistrial; and (3) the public interest in fair trials designed to end in just judgments is best served by ordering a mistrial.State v. Widner (1981), 68 Ohio St.2d 188, 190.
 "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion * * * [which] ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes * * *. [T]he faithful, sound and conscientious exercise of this discretion rests * * * upon the responsibility of the Judges under their oaths of office." United States v. Perez (1824), 22 U.S. 579, 580
(9 Wheat. 579) (emphasis added).
A mistrial without manifest necessity may bar retrial of an alleged offender under double jeopardy principles, as will be discussed further below.
In addition to a court's inherent discretionary power to declare a mistrial in cases of manifest necessity, R.C. 2945.36
defines situations where an Ohio trial court may declare a mistrial without double jeopardy problems. In fact, this is the statute upon which the trial court relied to declare the mistrial. R.C. 2945.36 provides:
 "The trial court may discharge a jury without prejudice to the prosecution:
 "(A) For sickness or corruption of a juror or other accident or calamity;
 "(B) Because there is no probability of such jurors agreeing;
 "(C) If it appears after the jury has been sworn that one of the jurors is a witness in the case;
 "(D) By the consent of the prosecuting attorney and the defendant.
 "The reason for such discharge shall be entered on the journal."
First, we question whether a juror's alleged inability to hear, which was known or should have been discovered during voir dire long before deliberations began, necessarily qualifies as juror illness as contemplated in R.C. 2945.36 (A). However, the issue before us does not depend upon what category the particular juror may have fit. Instead, the key question focuses on what steps the trial court must take to ensure that allegations that one juror is unable to fulfill his or her duties of weighing evidence and deliberating demonstrate manifest necessity (or the criteria defined in R.C. 2945.36) before declaring a mistrial suasponte.
Manifest necessity may exist when a juror becomes too ill or physically impaired to fulfill his or her duties. SeeReemsnyder v. Maryland (1980), 46 Md. App. 249, 256 (and cases cited therein). "It is within the trial judge's sound discretion to remove a juror whenever the judge becomes convinced that the juror's abilities to perform his duties become impaired." SeeUnited States v. Dominguez (C.A.5, 1980), 615 F.2d 1093, 1095, quoted in United States v. Huntress (C.A.5, 1992), 956 F.2d 1309,1311, certiorari denied (1993), 508 U.S. 905. However, even in cases of juror illness, the trial court must ensure that such illness affects the juror's ability to concentrate on and weigh the evidence in a case or increases pressure to "acquiesce in the conclusions of fellow jurors in order to escape more readily from the discomforts of the jury room." Grandison v. Miller (E.D.N Y Nov. 24, 1997), 96 CV 1236, unreported (trial court questioned juror both on and off the record about the severity and genuineness of statements regarding her ability to continue to deliberate).
A trial court is best able to assess the effects of particular events on juror deliberations, including observing firsthand a juror's condition to continue deliberating.Grandison, citing Shaw v. Norris, (C.A.8, 1994), 33 F.3d 958,962; Arizona v. Washington (1978), 434 U.S. 497, 511. Here, the trial court did not have any reliable firsthand information that a juror was in fact so hearing impaired that neither that juror nor the jury could complete deliberations.
The firsthand information the trial court did have consisted of the following:
(1) one juror's statement during voir dire that he suffered a fifty percent hearing loss, but could hear adequately under certain circumstances;
(2) the same juror's response that he would follow the law in a marijuana possession case despite his strong personal views that marijuana should be legalized;
(3) an unsigned note, purporting to be from the jury or some member of the jury, asking whether another member of the jury could be removed because alleged hearing difficulties were impeding deliberations; and
(4) the jury had on two previous occasions asked questions of the court without raising concerns about hearing difficulties;
(5) and the length of time the jurors had been deliberating before receiving the unsigned note (which is information not available in the record on appeal).
While it is possible to infer that the hearing-impaired juror identified during voir dire was the same juror alleged to be impeding deliberations, that is by no means the only conclusion to be drawn. More importantly, however, the trial court did not have any information other than a hearsay statement that one juror was impeding deliberations.
This court has previously held:
 "An order of the trial judge declaring a mistrial during the course of a criminal trial, on motion of the state, is error and contrary to law, constituting a failure to exercise sound discretion, where, taking all the circumstances under consideration, there is no manifest necessity for the mistrial, no extraordinary and striking circumstance and no end of public justice served by a mistrial, and where the judge has not made a scrupulous search for alternatives to deal with the problem." State v. Schmidt (1979), 65 Ohio App.2d 239, 244-245, citing United States v. Jorn (1971), 400 U.S. 470; Downum v. United States (1963), 372 U.S. 734; United States v. Perez (1824), 22 U.S. 579 (9 Wheat. 579). (Emphasis added.)
The same analysis applies to the court's sua sponte declaration of a mistrial where it does not have reliable firsthand knowledge of the events underlying its decision. State v. Widner,68 Ohio St. 2d at 189.
Appellant directed the trial court's and this court's attention to the case of Poage v. State (1854), 3 Ohio St. 229. There, retrial of a defendant was barred by double jeopardy after the trial court declared a mistrial without investigating the allegations of an unsigned note, apparently from the jury, indicating that the jury could not reach a verdict and one member was not a citizen. The trial court's decision was erroneous because of the absence of evidence that the note was in fact from the jury. There is no suggestion raised in this case that the note was not from the jury. However, both cases involve the issue of the trial court declaring a mistrial without reliable information.
The trial court relied upon State v. Sabbah, supra, to conclude that this court has "essentially stated that when a note comes from the jury, * * * the court must act on that note, and notably did not indicate that the court must make inquiry of the jury before acting on its note." In Sabbah, the note stated that the jury was deadlocked and disclosed in "unequivocal detail" the status of the jury's deliberations. Sabbah,13 Ohio App.3d at 139.
In Sabbah, the contents of the note went into so much detail, this court determined that it would be unnecessary for the trial court to inquire whether additional efforts or accommodations would change the deadlock. Under those particular facts, it was patently obvious that the trial judge had no reasonable alternative but to declare a mistrial. Thus, we determined that the trial judge's instruction to the jury to deliberate further was coercive and error.
Unlike Sabbah, the note in this case did not go into so much detail that further inquiry was arguably unnecessary. Additionally, the note in Sabbah concerned the entire jury's inability to reach a verdict. Here, the contents of the note targeted a single juror. The trial court should have determined whether that single juror was in fact physically impaired or a "hold-out" juror, particularly where one juror with hearing difficulties acknowledged his strong views on marijuana during voir dire.
Even if the trial court determined that juror's hearing impairment interfered with deliberations, the trial court should have inquired, as appellant requested, whether reasonable accommodations could allow the deliberations to continue or as in the case of a hung jury, whether the impediment made further deliberations futile. Had the court investigated the circumstances that were not "plain and obvious" and received reliable information that a juror had heard so little of the testimony, the jury could not meaningfully weigh the evidence, a mistrial would be appropriate. See Perez, 22 U.S. at 580. Had the court "scrupulously searched" for reasonable alternatives that might allow a hearing-impaired juror to fully participate in deliberations, but no alternative were available[1], a mistrial would be appropriate.
Here, the trial court abused its discretion by assuming the allegations in the note were true without inquiring into circumstances which were not plain and obvious. Consequently, the trial court did not have adequate firsthand knowledge to determine whether deliberations were so impaired that manifest necessity dictated a mistrial.
"The next inquiry which follows from the erroneous declaration of a mistrial concerns the trial judge's refusal to grant defendant's motion to dismiss the indictment" on double jeopardy grounds. Schmidt, 65 Ohio App.2d at 245. "The Double Jeopardy Clause bars retrials where bad-faith conduct by judge or prosecutor" threatens the "harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the Defendant." Id. at 248. If a trial court mistakenly grants a mistrial over defendant's objection or without consent, retrial is permitted only if there was manifest necessity for the mistrial.Id.; see United States v. Dinitz (1976), 424 U.S. 600, 606.
 "A State may not put a defendant in jeopardy twice for the same offense. * * * Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's `valued right to have his trial completed by a particular tribunal.' * * * Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.
 "Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate `manifest necessity' for any mistrial declared over the objection of the defendant." Arizona v. Washington, 497 U.S. 505-506 (citations and footnotes omitted).
Here, appellant did not request or consent to the mistrial. The prosecutor could not demonstrate manifest necessity for the mistrial.Schmidt, 65 Ohio App.2d at 245. Thus, the trial court should have granted appellant's motion to dismiss the indictment.
Appellant's sole assignment of error is found well-taken.
The judgment of the Huron County Court of Common Pleas, denying appellant's motion to dismiss, is reversed. Coming now to enter the judgment which the Court of Common Pleas should have entered, it is ordered that the indictment of the defendant be and the same hereby is dismissed and the defendant ordered discharged. It is ordered that appellee pay the court costs of this appeal.
JUDGMENT REVERSED.
 _______________________________ Melvin L. Resnick, J.
 _______________________________ James R. Sherck, J.
 _______________________________ Mark L. Pietrykowski, J.
CONCUR.
[1] Appellee's suggestion that the alternate juror be recalled did not provide a reasonable alternative. "Crim.R. 24 (F) reflects the general rule that, after the jury retires to deliberate, alternates may not replace regular jurors." State v.Hutton (1990), 53 Ohio St.3d 36, 46.