**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Hiram Lee BAUMAN, Pedro Talamas,**
**and John Cary,**
**Defendants–Appellants.**

No. 89–2176.

United States Court of Appeals,
Fifth Circuit.

Oct. 20, 1989.

Beth McGregor (court-appointed), Bailey & McGregor, Houston, Tex., for Bauman.

Frank A. Rubino, Coconut Grove, Fla., for Talamas.

Kent A. Schaffer, Houston, Tex., for Cary.

Scott Bankie, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before DAVIS and SMITH, Circuit Judges, and LITTLE, District Judge.[1]

JERRY E. SMITH, Circuit Judge:

Three defendants seek dismissal of an indictment pending against them after the trial court declared a mistrial. Since all defendants were once put in jeopardy, we must decide whether the fifth amendment to the Constitution bars reprosecution under the facts of this case.

Upon review of the entire record, we conclude that the trial court did not exceed its discretion in finding "manifest necessity" for a mistrial. Accordingly, the double jeopardy clause does not constitutionally bar reprosecution over the defendants' objection, and hence we affirm. A retrial may commence with respect to all defendants.

## I.

The appellants and several confederates were indicted on April 15, 1987, for a variety of drug-related conspiracy, distribution, and importation offenses. The events surrounding the trial were well publicized, described by the Houston media as the largest drug trial in the city's history. The district judge decided to try all defendants together and set a trial date well in ad-

1. District Judge of the Western District of Louisiana, sitting by designation.

vance to avoid scheduling conflicts commonly associated with trying numerous co-defendants.

Defendant Hiram Lee Bauman, himself an attorney, was provided court-appointed counsel. Problems developed between Bauman and his attorney, however, leading to substitution of appointed counsel on two separate occasions. The district court permitted Bauman to retain attorney Randy Holzapple, his third appointed counsel, several weeks before trial, with the understanding that the trial date of January 9, 1989, would not be continued. Bauman accepted this condition for substitution of counsel.[2]

All defendants appeared in court on the trial date. Because of a so-called "scheduling conflict," however, Holzapple failed to appear. The district court believed, based upon these events, that Bauman had retained Holzapple with full knowledge of the attorney's scheduling problem in order to stall the commencement of the trial. The district court offered Bauman the immediate services of his second court-appointed attorney, who was present in court for unrelated reasons, so that the trial could proceed. Bauman rejected the court's invitation and moved that either the case be continued or he be severed.

Sensing bad faith, the district court interpreted Bauman's actions as a calculated attempt to disrupt the trial. Accordingly, the court rejected Bauman's motion for a continuance or a severance and proceeded with the trial in the absence of Bauman's defense counsel, citing this court's decision in *United States v. Mitchell.*[3] Bauman vehemently objected to the proceedings, believing himself unrepresented in violation of the sixth amendment. He raised the objection at every available opportunity, even though the court noted his objection

for purposes of appeal and requested Bauman's cooperation.

A jury was empaneled and sworn, and the government began to present witnesses. Bauman, however, proved to be a disruptive defendant. Against the instructions of the court, he repeatedly objected to the lack of counsel before the jury and saw fit to interrupt the examination of government witnesses by seeking the court's permission to leave the courtroom.

Two days after trial began, Bauman moved for a mistrial, continuance, or severance based upon a newly-submitted affidavit from Holzapple stating that Bauman was unaware of his scheduling conflict. That same morning, the court received information that attorney Campbell, counsel for two other co-defendants, had been arrested in an unrelated case on charges of conspiring to bribe a justice of the peace and aggravated perjury.

The judge decided to meet with the defendants' attorneys to address the separate problems associated with Bauman's lack of counsel and Campbell's arrest. The defendants offered the court no uniform curative measure for any prejudice which they may have suffered: Campbell moved for a mistrial with respect to his two clients; several other co-defendants sought a mistrial; Bauman desired either a continuance, severance, or "as a last resort," a mistrial; defendants Talamas and Cary lobbied for a severance but opposed a mistrial. The government, not surprisingly, wanted to try all defendants together and thus sought a mistrial to correct any sixth-amendment error or incurable prejudice visited upon the jury.

Before deciding upon a course of action, the district court then interviewed the jurors to assess any possible prejudicial expo-

---

2. In his December 19, 1988, motion to substitute counsel, Bauman stated, "This motion is not made for the purpose of delay and there is sufficient time before trial for substitution of counsel and no injustice, prejudice, or obstruction of court procedure will be caused by the substitution." The court granted the substitution, subject to the limitation that "[t]his order shall not become a basis for a continuance in this case."

3. 777 F.2d 248, 257–58 (5th Cir.1985), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986), holding that a trial may proceed without defense counsel if the defendant, in bad faith, retains counsel with a scheduling conflict. The *Mitchell* court concluded that the right to counsel may be waived if it is purposefully used as an instrument for delay.

sure to news coverage. Prudently, the court made no direct reference to Campbell's arrest so as not to exacerbate any problem with jury bias. At this point in the proceedings, three jurors admitted to hearing media references to the trial, but they apparently had not paid attention to any details.

After interviewing the attorneys and jurors, and over the objection of Talamas and Cary, the judge declared a mistrial *sua sponte* as to all defendants. An order, coupled with more comprehensive written findings, was subsequently entered on January 26, 1989. The court found, *inter alia,* that Holzapple had known he had a scheduling conflict when he accepted representation of Bauman and had failed, in bad faith, to notify the court and to attend the trial on behalf of Bauman. The court was also concerned that past publicity, coupled with expected future media coverage of Campbell's arrest, would incurably prejudice all defendants.

After declaration of the mistrial, defendants Bauman, Talamas, and Cary unsuccessfully moved to dismiss the indictment on the theory that reprosecution is constitutionally barred. A retrial of all defendants has been stayed pending disposition of this interlocutory appeal.

## II.

### A.

■ The double jeopardy clause protects a defendant's "valued right to have his trial completed by a particular tribunal." *Crist v. Bretz,* 437 U.S. 28, 36, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978). It also bars abusive governmental conduct designed to harass a defendant through repetitive prosecution or undertaken for the purpose of increasing the likelihood of conviction.[4]

■ However, the double jeopardy clause is not an absolute bar to reprosecution once the jury has been empaneled and sworn. A defendant may, for example, waive double jeopardy protection by consenting to a mistrial before a verdict is rendered. As noted in *United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 1079–1080, 47 L.Ed.2d 267 (1976), "a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error" (citing *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)).

■ Without the defendant's consent to a mistrial, reprosecution becomes more difficult. Nevertheless, a retrial following a *sua sponte* declaration of mistrial over a defendant's objection is not prohibited under the fifth amendment where there exists "manifest necessity" for a mistrial. *Id.* 424 U.S. at 606–07, 96 S.Ct. at 1079. The "manifest necessity" exception, although narrow, frees the trial judge from the "Hobson's choice" of either continuing with a trial that in fairness should be terminated, or declaring a mistrial after jeopardy attaches and reprosecution is barred. *See, e.g., Cherry v. Director, State Bd. of Corrections,* 635 F.2d 414, 419 (5th Cir. Jan. 1981) (en banc) (manifest necessity for mistrial exists where, for example, judge or juror cannot attend because of illness or death), *cert. denied,* 454 U.S. 840, 102 S.Ct. 150, 70 L.Ed.2d 124 (1981).

### B.

■ For purposes of appellate review, the trial court's finding of "manifest necessity" for a *sua sponte* declaration of mistrial is to be upheld if the court exercised "sound discretion" in making that determination. *See Arizona v. Washington,* 434 U.S. at 514, 98 S.Ct. at 835; *Grandberry v. Bonner,* 653 F.2d 1010, 1014 (5th Cir. Unit A Aug. 1981). Application of this standard requires appellate courts to give the judge's mistrial order the "highest degree of respect," as he is most familiar with the

---

4. *See Arizona v. Washington,* 434 U.S. 497, 503–04, 98 S.Ct. 824, 829–30, 54 L.Ed.2d 717 (1978) (retrial increases the financial and emotional burden on the accused, prolongs the stigma associated with unresolved charges, and increases the risk that an innocent person may be convicted).

events that compromised the trial.[5] The availability of alternatives less draconian than a mistrial does not necessarily preclude reprosecution, as reasonable judges may differ concerning proper curative measures. *Grandberry*, 653 F.2d at 1014; *Cherry*, 635 F.2d at 418–19.

■ Additionally, we are free to scrutinize the entire record and are not limited to only those findings made contemporaneously with the mistrial order. *See Abdi*, 744 F.2d at 1503. This plenary review of the record assists us in determining, as required by our prior decisions, whether the trial judge "carefully considered the alternatives and did not act in an abrupt, erratic or precipitate manner." *Grandberry*, 653 F.2d at 1014.

### III.

### A.

The Supreme Court has said that the valued right to be tried before a particular tribunal "is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Arizona v. Washington*, 434 U.S. at 505, 98 S.Ct. at 830. However, because the valued right is so important, the government must show "manifest necessity" for any mistrial declared over a defendant's objection. *Id.; Baker v. Estelle*, 711 F.2d 44, 47 (5th Cir.

1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 724, 79 L.Ed.2d 185 (1984).[6]

In *Arizona v. Washington*, the Supreme Court declined to define manifest necessity precisely or to enunciate rules of mechanical application.[7] It offered limited guidance, saying only that the "high degree of necessity" mandated by the phrase can be found in a variety of circumstances. *See* 434 U.S. at 506–09, 98 S.Ct. at 830–32. Thus, the Court left the definition of the phrase deliberately ambiguous, affording the trial judge considerable discretion to declare a mistrial without immunizing a defendant from reprosecution.

■ The phrase "manifest necessity," first used in double jeopardy jurisprudence in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), has been judicially refined to such an extent that it is today somewhat misleading: It implies a greater burden on the government than is actually demanded to achieve a reprosecution after a mistrial. As the *Washington* Court noted, "Indeed, it is manifest that the key word 'necessity' cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." 434 U.S. at 506, 98 S.Ct. at 831. Thus, manifest necessity, in modern legal jargon, is equivalent to "a high degree of necessity." [8]

---

**5.** *Grooms v. Wainwright*, 610 F.2d 344, 346 (5th Cir.), *cert. denied*, 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (1980); *see also Abdi v. Georgia*, 744 F.2d 1500, 1503 (11th Cir.1984) (where grounds for mistrial involve jury prejudice, decision of trial judge deserves "great deference"), *cert. denied*, 471 U.S. 1006, 105 S.Ct. 1871, 85 L.Ed.2d 164 (1985).

**6.** We also have explained the matter as follows:

The bar of the double jeopardy clause operates to protect an accused against multiple prosecutions or multiple punishments for the same offense. Jeopardy attaches at the empaneling and swearing in of the jury, and from then on, consideration must be given to the defendant's 'valued right ... to have his trial completed by the particular tribunal summoned to sit in judgment on him.' When that right is denied by declaration of a mis-

trial at the behest of the prosecution or on the court's own motion, reprosecution is prohibited unless there is a 'manifest necessity for the [mistrial] or the ends of public justice would otherwise be defeated.'

*United States v. Bobo*, 586 F.2d 355, 362 (5th Cir.1978) (citations omitted), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979).

**7.** "[It is] readily apparent that a mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide." *Arizona v. Washington*, 434 U.S. at 505 n. 16, 98 S.Ct. at 830 n. 16 (citing *Jorn*, 400 U.S. at 480, 91 S.Ct. at 554).

**8.** We note that the trial judge need not make an express finding of "manifest necessity," nor

## B.

In the instant case, the court and defendants expressed considerable concern over "spillover prejudice" if the defendants were forced to associate with Campbell, recently arrested, and his clients. In addition, all parties agree that Bauman conducted himself in open court in a fashion that frustrated both the judge and the defendants in maintaining order at trial. The defendants feared that Bauman's poor decorum before the jury would have a negative impact upon all of them.

It is apparent from the record that the trial court was concerned about the possibility of a sixth amendment error if the trial had proceeded in the absence of defense counsel for Bauman. The court at first believed that Bauman had sought deliberately to interrupt the progress of the trial by soliciting the absence of Holzapple when the trial date had been agreed to by all parties. However, Holzapple's affidavit, if true, indicated that Bauman had not retained his services in bad faith in order to disrupt the trial.

Aside from problems with representation, the judge and the remaining defendants found Bauman's interruptions and repetitious objections to be potentially prejudicial as to all defendants. This spillover prejudice was exacerbated by widespread news reports of Campbell's arrest. The judge found that the risk of both past and future exposure—through news reports and jurors' conversations with friends—was sufficient to merit a mistrial.

■ With little difficulty, we conclude that Bauman's double jeopardy appeal is without merit in this case for the simple reason that he *requested* the mistrial. As noted previously, a motion by a defendant for a mistrial usually removes any barrier standing in the way of reprosecution under *Dinitz*. His argument that his motion for a mistrial was "a last resort" and that he really wanted a severance or a continuance is unpersuasive.

■ The double jeopardy defense asserted by Talamas and Cary, however, is not meritless, as they consistently objected to a mistrial. They remind us that they even agreed to stipulate to certain government evidence in order to avoid a mistrial as to them. Moreover, Talamas and Cary argue that *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), requires that the district court consider less drastic alternatives and, if possible, to choose a remedy of severance instead. They allege that the judge declared a complete mistrial because of selfish concerns for "judicial economy" in conducting a single trial, and that such considerations have no place in double jeopardy jurisprudence.

We agree with Talamas and Cary to the extent that they understand *Jorn* to require the trial court methodically to consider alternatives to a mistrial. However, we reject their argument that the trial court must always agree to sever certain defendants if possible. As noted before, reasonable judges may differ on the proper curative measure, and appellate courts are not meant to second-guess the sound discretion of the trial judge in declaring a mistrial for juror prejudice when that judge is closest to the compromising events.

Moreover, we disagree with defendants' suggestion that the trial judge was concerned solely with judicial efficiency when he terminated the trial. The record reflects that much more was involved. The trial judge expressed concern that bifurcated trials could prejudice subsequent proceedings because of the publicity surrounding this large-scale drug trial. He also feared incurable juror bias resulting from Bauman's disruptions in front of the current panel. The future impact of Campbell's arrest, about which the jurors were

must he expressly state that he considered alternatives and found none to be superior. *See Washington*, 434 U.S. at 501, 98 S.Ct. at 828; *Abdi*, 744 F.2d at 1503. We need only to be satisfied from the complete record that the trial judge exercised sound discretion in declaring a mistrial, *sua sponte*, in a factual setting that demonstrates a high degree of necessity for terminating the trial before the jury completes its solemn task of rendering a verdict.

asked only indirectly, was also speculative and thus entitled to great deference.

It is evident to us that the trial court here did not act in an abrupt, erratic, or precipitate manner. He consulted with the counsel of all defendants: Most wanted a mistrial for their clients; all wanted a mistrial with respect to Bauman; no one wanted to be seen with Campbell; and Talamas and Cary wanted a severance only. The court also interviewed all the jurors to assess the extent of juror bias.

The court proceeded to consider the options of a continuance and severance. Contrary to the suggestion of the defendants, his findings concerning alternatives other than a mistrial need not be limited to those contemporaneously made with his mistrial order. In fact, such findings need not even be made expressly. *See Abdi*, 744 F.2d at 1503 (record need only reflect that alternatives were considered). Nevertheless, in this case the trial court did in fact enter additional findings, along with his written order, two weeks later. He concluded that a continuance would only expose the empaneled jurors, over the course of a month's delay, to more prejudicial media influence. A severance was similarly rejected because of the fear of incurable prejudice on the part of the current panel, concerns for judicial economy and preservation of evidence, and the express consent of all but two of the defendants for a mistrial.

The fact that the judge's subsequent written findings may have been inconsistent, in whole or in part, with earlier oral findings, as the defendants suggest, is a matter to be considered upon review.[9] We recognize, however, that such changes may be attributable to the judge's access to more information over time or his quiet reflection upon the unusual events that transpired before him here.

Contrary to what the defendants suggest, double jeopardy jurisprudence does not bar a judge's reassessment of the impact of certain events. Unless we are convinced from our review of the record that the trial judge is belatedly searching for manifest necessity where none existed at the trial's termination, we find no interest to be served by shielding criminal defendants from reprosecution because of a judge's fortuitous choice of words. Thus, the proper analysis focuses upon the complete record and not upon isolated statements of the presiding judge.

## IV.

We recognize that other judges may have dispensed differently with the problems presented at trial in the instant case. Nevertheless, we conclude that the trial judge did not abuse his discretion in declaring a mistrial over the objection of two defendants here. Bauman's lack of counsel and his bizarre behavior before the jury, coupled with Campbell's arrest, were sufficiently prejudicial as to all defendants. The decision to terminate the trial could have been reached similarly by any reasonable judge.

We are satisfied from our review of the record that a high degree of necessity existed for a complete mistrial. We find that the court evaluated, with due deliberation, whether a mistrial or some other curative measure was appropriate. Accordingly, we AFFIRM. A retrial may proceed with respect to all defendants.

---

**9.** Defendants Talamas and Cary remind us that the judge found no prejudicial bias when he interviewed the jurors but that he did find such bias, or the threat thereof, in subsequent written findings.