IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2008

Charles R. Fulbruge III
Clerk

No. 07-51429

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

CHARLES CAMPBELL,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Charles Campbell appeals his felony conviction on the ground that his second trial violated the Double Jeopardy Clause of the Fifth Amendment. We affirm.

I

Campbell was arrested and charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922 and 924(e). He pleaded not guilty and a trial before a jury was subsequently commenced. At the close of approximately six hours of testimony over the course of two days, the district court dismissed the lone alternate juror without instructions to refrain from discussing the case. The jury then retired to deliberate.

Soon thereafter, the jury sent a note to the district judge stating the following: "Francisco Flores does not understand what[']s going on and need[s] to talk to the judge." The parties agree that this note referred to the juror who had identified himself in response to questions during the voir dire process as Francisco Ramirez. Campbell speculates in his appellate brief that Ramirez's name was Ramirez-Flores or Flores-Ramirez. In any event, this and subsequent notes from jurors referred to Ramirez as "Flores." To avoid confusion, we will refer to the juror as "Ramirez."

After receiving this note, the judge brought the parties together to discuss how to respond. They considered the possibility of speaking to Ramirez directly but decided against it. Instead, the court responded to the jury's question as follows: "If [Ramirez] has a question or questions, please have [Ramirez] write down his question or questions."

After a brief period of time, the court received another note. It stated: "One of our jurors, [Ramirez], is Spanish dominant. What are the implications to the outcome? Interpretation of our deliberations is necessary." The judge again conferred with the parties and said: "in light of that, I understand this to read that Mr. [Ramirez] wants a translator so he can fully understand the deliberations and questions of his fellow jurors. My problem with that is, if he needs the assistance in there, how was it that he was able to understand what was going on in here [referring to the trial testimony]?"

The court then explored the option of recalling the alternate juror. But, as defense counsel noted, this was not feasible under Rule 24(c)(3) of the Federal Rules of Criminal Procedure because no steps were taken to insulate the alternate juror before dismissal. After obtaining Campbell's agreement, the judge decided to call Ramirez to the courtroom to determine how much of the

trial he understood.

In his conversation with the court, Ramirez stated that he was primarily a Spanish speaker and that he thought he "had problems" understanding the testimony. Ramirez also said "Yes" when the court asked whether he might have missed some of the testimony during the trial. Ramirez confirmed that he, and not the other members of the jury, had requested an interpreter for the jury deliberations. But when the Government asked, "Did you understand everything that was presented during the course of this trial?," Ramirez stated, "Uh-huh. Yes, sir. I understand what you are talking about." Additionally, when the court later asked whether he understood the evidence and witnesses, Ramirez stated that he understood "[a]ll of it."

The court, the Government, and Campbell's counsel discussed how to proceed. The district judge said he was inclined to let Ramirez continue deliberating. Defense counsel agreed with this course of action. The court then sent a note to the jury stating the following: "The Court is satisfied that Mr. Ramirez can serve as a juror. Please review your instructions and continue your deliberations."

Shortly thereafter, the jury sent out yet another note stating: "We, the jurors, are stuck on a deadlock right now. Everybody is very strong on their position. We [are] still having communication problems with Mr. [Ramirez]." At that point, the district court pondered but quickly dismissed the idea of providing a translator for Ramirez in the jury room: "I have never heard of the ability to send in a translator into the jury deliberation room. That is without precedent. So I don't know what I can do about that." The Government then brought up the possibility of dismissing Ramirez and continuing with eleven jurors, and defense counsel objected.

3

Looking for guidance, the court reviewed the Advisory Committee Notes to Rule 23 of the Federal Rules of Criminal Procedure, which state, in relevant part, "[i]f the trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken." Conducting a balancing analysis, the court stated that it "should lean more towards mistrial than [it] should proceeding with eleven." Concerned about whether Ramirez understood all of the testimony at trial, the court asked defense counsel, "why am I not just better off calling a mistrial right now and doing this all over again?" Defense counsel responded, "Well, I think you have the authority to do that." But the court ordered the jury to continue deliberating and, an hour later, the jury recessed for the day.

The next morning, Ramirez notified the courtroom security officer that he wanted to speak to the judge. Ramirez addressed the court, in the presence of the Government, defense counsel, and Campbell, stating, "I have a problem with the communication." After the judge asked him what his question was, Ramirez responded: "Well, I don't have—have communication with the other people, you know, when talking about this case, so it is my problem. No can . . . ." The judge then interrupted, asking: "You are not able—and don't let me put words in your mouth, but what I hear you telling me is that you are not able to participate in that room because of your limited English; is that correct?" Ramirez responded, "Yes, sir." After the court ordered a translation of his last question, Ramirez affirmatively stated, "That's true, yes." The court then gave the Government and defense counsel the opportunity to ask questions of Ramirez, but both declined.

Based upon his "very clear statement" in open court, the court found that

Ramirez was not able to effectively communicate and participate in the jury deliberative process. Defense counsel objected to such a finding on the grounds that it was not supported by the record. But when the court offered to present Ramirez again for questioning, defense counsel stated, "I am under no obligation to speak directly to a juror in this case."

Defense counsel then asserted that dismissing Ramirez would raise "serious jeopardy considerations." The court responded by offering defense counsel a choice—dismiss Ramirez and proceed with eleven jurors or declare a mistrial. Defense counsel objected to going forward with eleven jurors. The judge then declared a mistrial and defense counsel objected.

Before the second trial began, Campbell filed a motion to dismiss on the ground that a second trial would violate the Double Jeopardy Clause of the Fifth Amendment. The district court denied the motion, and a jury ultimately found Campbell guilty.

II

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "twice put in jeopardy of life or limb."[1] As the Supreme Court has explained, the clause "unequivocally prohibits a second trial following an acquittal."[2] But "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused."[3] When a trial ends in a mistrial over the defendant's objections, a

---

[1] U.S. CONST. amend. V.

[2] Arizona v. Washington, 434 U.S. 497, 503 (1978).

[3] Id. at 505.

retrial is permitted as long as the mistrial was a result of a "manifest necessity."[4]

The phrase "manifest necessity," the Supreme Court has said, does not articulate "a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge."[5] Instead, it is intended to be flexible, allowing a trial judge to consider the circumstances of a particular case in determining whether a mistrial, or some other option, makes the most sense.[6]

The Supreme Court counsels to give "great deference"[7] to a finding of necessity if the district court exercised "sound discretion" in making that determination.[8] "[T]he trial judge need not make an express finding of 'manifest necessity,' nor must he expressly state that he considered alternatives and found none to be superior."[9] An appellate court "need only to be satisfied from the complete record that the trial judge exercised sound discretion in declaring a mistrial, sua sponte, in a factual setting that demonstrates a high degree of

---

[4] Id.

[5] Id. at 506.

[6] See id. at 510 n.28 ("[T]he rationale for this deference in the 'hung' jury situation is that the trial court is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate."); see also United States v. Bauman, 887 F.2d 546, 549 (5th Cir. 1989) ("The availability of alternatives less draconian than a mistrial does not necessarily preclude re-prosecution, as reasonable judges may differ concerning proper curative measures.").

[7] Foster v. Gilliam, 515 U.S. 1301, 1303 (1995) ("[In Arizona v. Washington] we stated that the trial court's judgment about the necessity [to declare a mistrial] is entitled to great deference, never more so than when the judgment is based on an evaluation of such factors as the admissibility of evidence, any prejudice caused by the introduction of such evidence, and the trial court's familiarity with the jurors." (citing Washington, 434 U.S. at 513-14)).

[8] See Washington, 434 U.S. at 514; Bauman, 887 F.2d at 549.

[9] Bauman, 887 F.2d at 550 n.8 (citing Washington, 434 U.S. at 501).

necessity for terminating the trial before the jury completes its solemn task of rendering a verdict."[10]  Our plenary review of the denial of a double jeopardy claim[11] focuses on whether "the record, considered as a whole, indicates that the trial judge in deciding to declare a mistrial, carefully considered the alternatives and did not act in an abrupt, erratic, or precipitate manner."[12]  We review all factual findings underpinning the district court's determination for clear error.[13]

### III

Campbell first challenges the district court's finding that Ramirez was unable to communicate and participate in the jury deliberative process.  We conclude that the district court's finding was not clearly erroneous.[14]  When the district court asked Ramirez during their first encounter whether he understood the entire trial, Ramirez responded that he had not understood all of the testimony.  Although during the same conversation Ramirez reversed his position and said that he did understand all of the testimony, the next day Ramirez asked to speak to the judge again to explain that he was "not able to participate [in deliberations] because of [his] limited English."  This, coupled with the numerous notes from the jury stating that they were unable to

---

[10] Id.

[11] United States v. Wilson, 77 F.3d 105, 111 (5th Cir. 1996).

[12] Grandberry v. Bonner, 653 F.2d 1010, 1014 (5th Cir. 1981) (citing United States v. Jorn, 400 U.S. 470, 487 (1971); Arizona, 434 U.S. at 514-515; Illinois v. Somerville, 410 U.S. 458, 469 (1973)); see also Bauman, 887 F.2d at 550.

[13] United States v. Solis, 299 F.3d 420, 434 (5th Cir. 2002) (citation omitted).

[14] See United States v. Huntress, 956 F.2d 1309, 1312 (5th Cir. 1992) ("'[I]t is within the trial judge's sound discretion to remove a juror whenever the judge becomes convinced that the juror's abilities to perform his duties have become impaired.'" (quoting United States v. Dominguez, 615 F.2d 1093, 1095 (5th Cir. 1980))).

7

effectively communicate with Ramirez, supports the district court's finding that Ramirez's limited ability to speak English precluded him from meaningfully taking part in deliberations.

After the district court found that Ramirez was unable to participate in deliberations, the court noted that it had three options: (1) provide Ramirez with an interpreter and let him continue deliberating; (2) dismiss Ramirez and allow the jury to deliberate with only eleven members; or (3) declare a mistrial.

## A

Campbell argues that the district court should have allowed Ramirez to continue deliberating with an interpreter. The district court rejected this option because a translator would not alleviate concerns that Ramirez did not understand all of the trial testimony and because the court believed such a step was "without precedent."

In his brief, Campbell points to two cases in which courts have determined that it was not reversible error for a district court to allow a translator into the jury room to assist a juror in understanding the discussions. The first is United States v. Chang,[15] in which the defendant argued that his rights were violated when the district court allowed an interpreter into the jury room for an English-deficient juror.[16] The Eleventh Circuit affirmed the defendant's conviction in a one-word unpublished table disposition.[17]

In the second case cited by Campbell, United States v. Dempsey, the Tenth

---

[15] 67 F.3d 313, 313 (11th Cir. 1995) (table case).

[16] Brief of Appellant at *9, United States v. Chang, 67 F.3d 313 (11th Cir. 1995) (No. 93-3061), 1995 WL 17063059.

[17] Chang, 67 F.3d at 313.

Circuit held that the district court had not committed reversible error when it allowed a deaf juror to serve with an interpreter during both the trial and jury deliberations.[18] However, in Dempsey, there was no concern that the juror understood the testimony because the interpreter was present during the trial.[19] In this case, even if Ramirez had been provided a translator for deliberations, that would have done nothing to assuage the district court's concerns that Ramirez's deficiency in comprehending English prevented him from understanding the trial testimony.

Even if the district court could have ordered an interpreter, an issue we do not resolve, the court was well within its discretion to deny the use of an interpreter for jury deliberations in light of the concerns regarding Ramirez's comprehension of the evidence presented during trial.

## B

Once the district court dismissed Ramirez, it was left with two options: continue with eleven jurors or declare a mistrial. At trial, Campbell objected to both options. Nonetheless, Campbell now contends that the district court should have chosen to continue the trial with eleven jurors rather than declaring a mistrial.

Based on its reading of the Advisory Committee Notes to Rule 23, the district court determined, in light of the fact that the first trial was short, that it should declare a mistrial rather than proceed with only eleven jurors.[20] The

---

[18] 830 F.2d 1084, 1092 (10th Cir. 1987).

[19] Id.

[20] See FED. R. CRIM. P. 23 advisory committee's note ("If the trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken.").

district court's decision finds support in our jurisprudence.

We have previously affirmed a district court's decision to declare a mistrial when the defense counsel objected to continuing a trial with only eleven jurors. In Cherry v. Director, State Board of Corrections, this court upheld a district court's determination that a "manifest necessity" required a mistrial after a juror was dismissed because one of his parents died.[21] In Cherry, we noted that the district court's action was "not abrupt, but was taken only after inquiry and overnight deliberations, after at least some consultation with counsel during which [the defendant] rejected one available alternative [to declaring a mistrial] . . . ."[22] We also noted that "[t]he proposition that the legitimate unavailability of a juror is 'manifest necessity' permitting retrial has been widely accepted."[23]

In the present case, the district court gave thoughtful and lengthy consideration to the question of whether Ramirez should be dismissed. The court solicited the opinion of both the Government and Campbell, and its ultimate decision was neither abrupt nor precipitate. We defer to the district court's exercise of its sound discretion. Accordingly, we hold that the district

---

[21] 635 F.2d 414, 420 (5th Cir. 1981).

[22] Id. at 418. Compare Granberry v. Bonner, 653 F.2d 1010, 1014-15 (5th Cir. 1981) (concluding that no 'manifest necessity' existed when the district court declared a mistrial after "only a matter of minutes" of speaking with allegedly ill juror and the court did not give counsel for either side any opportunity to object or consent or to suggest alternatives).

[23] Id. at 419 (citing Whitfield v. Warden of Md. House of Corr., 486 F.2d 1118, 1121 (4th Cir. 1973); Oelke v. United States, 389 F.2d 668, 671 (9th Cir. 1967); Larios v. Superior Court, 594 P.2d 491, 494 (Cal. 1979); State v. Critelli, 24 N.W.2d 113, 117 (Iowa 1946); Comment, Retrial After Mistrial: The Double Jeopardy Doctrine of Manifest Necessity, 45 MISS. L. J. 1272, 1282 (1974); 21 AM. JUR. 2D Criminal Laws § 203 (1965); Stocks v. State, 18 S.E. 847 (Ga. 1893); Annot., 53 A.L.R. 1062 (1928)).

court properly determined that a "manifest necessity" required it to declare a mistrial in Campbell's first trial. Campbell's second trial and subsequent conviction, therefore, did not violate the Double Jeopardy Clause.

*   *   *

AFFIRMED.