# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30086

_____

Lerone Lewis,

*Petitioner—Appellant*,

*versus*

Edward Bickham, *Warden, Dixon Correctional Institute*,

*Respondent—Appellee*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:20-CV-484

_____

Before King, Willett, and Douglas, *Circuit Judges*.

Per Curiam:

Lerone Lewis claims that his conviction for aggravated battery is barred by the Double Jeopardy Clause of the Fifth Amendment. Lewis underwent three trials for the same offense. His first trial resulted in a hung jury, and the trial court declared a mistrial. After the trial court empaneled and swore in a jury for a second trial, it declared a mistrial based on two jurors' concerns about their personal calendars. The next day, with new jurors, a third trial resulted in a conviction.

No. 23-30086

Pursuant to 28 U.S.C. § 2254, Lewis filed a habeas petition. The district court considered his petition on the merits and denied habeas relief. After reviewing the record, we conclude that the district court erred in determining that the trial court had a manifest necessity for declaring a second mistrial based on juror availability. Therefore, we REVERSE and REMAND for issuance of the writ.

## I.   Background

### A. Facts

On April 4, 2018, Lewis went to trial for an aggravated battery charge in Louisiana. The jury failed to reach a verdict and the trial court declared a mistrial. On October 17, 2018, a second trial began. As the parties proceeded with voir dire, the prosecutors used peremptory strikes for two jurors who indicated that they could not attend a second day of trial. As a result, and in accordance with Louisiana state procedures, the trial judge swore in six jurors and one alternate juror. *See* La. Code Crim. Proc. art. 782(A); La. R.S. 14:34.

Next, the trial judge announced that while he expected trial to conclude that day, it "may go into tomorrow." A juror then informed the trial judge that it was the last day of service for some of the jurors. The trial judge responded that he would "try to wrap up this trial today." That proved to be challenging after some time had passed while the parties disputed over an unavailable witness.

At least two jurors had scheduling difficulties. Before opening arguments, a juror sent word that she was having scheduling conflicts. She explained that she was a realtor and had "several appointments" with a client who was getting "angry." The following discussion occurred:

2

No. 23-30086

THE COURT:  Can you reschedule?

JUROR ONE:  I haven't been able to yet.

THE COURT:  Why not?

JUROR ONE:  Because I have to find someone, another real estate agent, to show the property.

THE COURT:  To do the property showing?

JUROR ONE:  I haven't been able to, yes.

Subsequently, a second juror informed the trial court that she had scheduling difficulties because she needed to pick up her children from school and watch over them. Then, the following conversation transpired:

THE COURT:  Can anyone else pick up your children?

JUROR TWO:  My mama is picking them up from school right now, but I didn't have preparation –

THE COURT:  For afterwards?

JUROR TWO:  Yes. I did just talk to my mama and the deputy upstairs. The problem is coming back for tomorrow.

THE COURT:  I'm sorry. Say it again.

THE JUROR:  For tomorrow, like, she'll be okay today, but it is –

THE COURT:  But for the rest of the night, you don't intend –

THE JUROR:  Yeah. My mom, I just talked with her. She normally has plans because she is part of a group, but she will try to not do it for today. But if it goes into tomorrow, it would put a hindrance on me because I don't have anyone else besides her.

THE COURT:  So can she watch them tonight?  Is that possible?

THE JUROR: Not overnight.

THE COURT:  Not overnight. Oh, no, don't worry. You don't have to worry about that. How late can you –

THE JUROR:  I mean, they are fine at her house for tonight. It can't be – we live in two different residences and they go to school uptown.  It's two different – that's a lot.

THE COURT: Okay. You guys can go back upstairs.

By then, it was 4:00 p.m. and the trial judge told the parties that they had "a decision to make" because of "logistical problems" with the two jurors and because the parties had yet to begin their opening remarks. In response, the prosecution moved for a continuance. The trial judge denied the motion, stating that it was "the last day [of service] for these jurors" and he was "not going to have [them] come back when they don't have to . . . tomorrow." But to give the parties time to "make up [their] mind[s]" about how to proceed without a complete jury panel, the trial judge held a 10-minute recess.

After the recess, the parties readdressed the court. Both sides seemed to agree that trial would continue to the next day. Defense counsel suggested that juror two might be able to find someone else to pick up her children from school or that trial might conclude before school ended. The trial court, however, dismissed that idea because "[t]his was their last day of service" and the jurors "probably have other appointments for tomorrow." Still, he recalled the jurors for further questioning: "If you want to ask them if they can come back tomorrow, fine, fine with me. If they say yes, okay, we'll go on with it. If they say no, you've got a problem."

No. 23-30086

The trial judge then summoned the jurors to return to the courtroom. Now, only three jurors said that they could return the next day. Again, the trial judge dismissed the jury, remarking to the parties that he was "all ears." The defense counsel foresaw a double jeopardy violation in the following colloquy:

> DEFENSE COUNSEL: The jury has been sworn in. Jeopardy is attached. We would object.
>
> THE COURT: Jeopardy is attached when there is a witness, right? We don't have to worry about jeopardy. Anyway, go ahead.
>
> DEFENSE COUNSEL: That's only in a bench trial, Judge.
>
> THE COURT: What?
>
> DEFENSE COUNSEL: That's only in a bench trial.
>
> THE COURT: Yeah, I know. You don't have to worry about that. State, I'm going to set this for a trial tomorrow and declare a mistrial.
>
> DEFENSE COUNSEL: Judge, we would object.

The trial court declared a mistrial sua sponte under two provisions of the Louisiana Code of Criminal Procedure. *See* La. Code Crim. Proc. art. 775(3) (mistrial permitted for a "legal defect in the proceedings" that would make the judgment reversible); *id.* art. 775(5) (mistrial permitted if it is "physically impossible" for the trial to proceed in conformity with the law). Nonetheless, the prosecutor stated for the record that she had not moved for a mistrial and that both parties were ready to proceed with trial.

Lewis's third trial began the following day. At the start, defense counsel moved to quash on double jeopardy grounds. The trial judge, however, denied the motion without further comment. Lewis's third jury

No. 23-30086

voted to convict him, and the trial court sentenced him to 20 years of incarceration.

## B. Procedural History

On direct appeal, Louisiana's Fourth Circuit Court of Appeal rejected Lewis's double jeopardy argument because he purportedly failed to avail himself of Louisiana's emergency discretionary review system. *See State v. Lewis*, 2019-0448 (La. App. 4 Cir. 2/12/20), 292 So. 3d 945, 950-52 ("[W]e find that [Lewis] failed to seek emergency review of the district court's mistrial order in accordance with LA. C.CR.P. ART. 775.1, and therefore, waived his right to proceed to trial with the dismissed jury."). Louisiana's Supreme Court denied Lewis's application for a supervisory writ without explanation. *See State v. Lewis*, 2020-00389 (La. 6/22/20), 297 So. 3d 760.

Lewis sought a writ of habeas corpus, again challenging his conviction on double jeopardy grounds.[1] *See* 28 U.S.C. § 2254. A magistrate judge determined that his claim was not barred by the doctrine of procedural default but recommended denying it on the merits, finding no double jeopardy violation. *See Lewis v. Kent*, No. CV 20-484-JWD-EWD, 2022 WL 18276906, *4-8 (M.D. La. Nov. 18, 2022), *report and recommendation adopted*, No. CV 20-484-JWD-EWD, 2023 WL 174965 (M.D. La. Jan. 12, 2023). Specifically, the district court found that the trial judge's decision was entitled to deference and that the record showed a manifest necessity for the declaration of a mistrial. *Id.* at *7. The district court agreed, dismissed

---

[1] Lewis's original habeas petition also asserted a *Batson* claim and a Confrontation Clause claim. In September 2022, the parties agreed that Lewis would withdraw those claims in exchange for resentencing in state court. Lewis was resentenced to 5 years' imprisonment.

No. 23-30086

Lewis's habeas petition, and granted him a certificate of appealability on that issue. *Id.*

We have jurisdiction to review Lewis's petition pursuant to 28 U.S.C. §§ 1291 and 2253.[2]

## II.    STANDARD OF REVIEW

We review the district court's findings of fact for clear error and its legal conclusions de novo. *Thomas v. Vannoy*, 898 F.3d 561, 565–66 (5th Cir. 2018). Because the state court's denial of Lewis's claim was on procedural grounds,[3] we owe no AEDPA-related deference to the state court's decision.[4] *See Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) ("AEDPA's deferential standard is afforded to a state court decision only when the state court adjudicated the petitioner's claims on the merits.").

---

[2] Because Lewis was resentenced to 5 years in prison, his sentence has expired, but under *Spencer v. Kemna*, his petition is not moot. *See Spencer v. Kemna*, 523 U.S. 1, 8 (1998) (explaining that we may "presume that a wrongful criminal conviction has continuing collateral consequences" for the purpose of establishing jurisdiction under Article III, § 2, of the Constitution).

[3] There is no dispute that Lewis exhausted his claim in state court. Based on the doctrine of procedural default, however, Bickham argued that Lewis's claim is unreviewable. The district court rejected that argument, explaining that the state court relied on a procedural rule that was not an adequate state procedural bar. Bickham has not challenged that ruling in this appeal. Accordingly, Bickham has abandoned the procedural default argument. *See United States v. Guillen-Cruz*, 853 F.3d 768, 777 (5th Cir. 2017) (finding that the appellee forfeited an issue by failing to raise the argument in its brief).

[4] *See* 28 U.S.C. § 2254(d) (considering whether the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts").

No. 23-30086

## III.   Applicable Law

The Double Jeopardy Clause provides that no person subject to the same offense shall "be twice put in jeopardy of life or limb." U.S. Const. amend. V. If a trial court declares a mistrial over a defendant's objection, the Double Jeopardy Clause will bar a future trial unless there is a "manifest necessity" for the mistrial.[5] *Arizona v. Washington*, 434 U.S. 497, 505 (1978) (citation omitted). "[T]he key word 'necessity' cannot be interpreted literally; instead . . . we assume that there are degrees of necessity," and the Court requires a "'high degree' before concluding that a mistrial is appropriate." *Id.* at 506.

Whether a mistrial was based on a sufficiently "high degree" of necessity "is answered more easily in some kinds of cases than in others." *Id.* at 506-07. Accordingly, this standard cannot "be applied mechanically or without attention to the particular problem confronting the trial judge." *Id.* at 506. Because there is a "spectrum of trial problems which may warrant a mistrial" and they "vary in their amenability to appellate scrutiny," the deference owed to the trial court "varies depending on the cause of the mistrial." *United States v. Fisher*, 624 F.3d 713, 718 (5th Cir. 2010).

Mistrials based on "the unavailability of critical prosecution evidence" or "when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused" are viewed with "the strictest scrutiny." *Id.* at 508; *see also Cherry v. Dir., State Bd. of Corr.*, 635 F.2d 414, 419 n.6 (5th Cir. 1981) (en banc); *see, e.g.*, *Fisher*, 624 F.3d at 718-19 (providing examples).

---

[5] *See Crist v. Bretz*, 437 U.S. 28, 36 (1978) ("Throughout [Anglo-American] history there ran a strong tradition that once banded together a jury should not be discharged until it had completed its solemn task of announcing a verdict.").

On the other hand, a decision to declare a mistrial based on a deadlocked jury is afforded "great deference." *Arizona*, 434 U.S. at 510; *see also Renico v. Lett*, 559 U.S. 766, 774 (2010); *Fisher*, 624 F.3d at 718-19. In all instances, the ultimate inquiry is whether "the trial judge exercised 'sound discretion' in declaring a mistrial." *Arizona*, 434 U.S. at 514; *see also United States v. Campbell*, 544 F.3d 577, 581 (5th Cir. 2008). Because this court's inquiry into manifest necessity is not "cabined by the explanations that the trial court has explicitly set forth, . . . the court is free to scrutinize the entire record." *Fisher*, 624 F.3d at 718 (citing *Bauman*, 887 F.2d at 550). This "plenary review" requires that we decide whether the trial judge "carefully considered the alternatives and did not act in an abrupt, erratic or precipitate manner." *United States v. Bauman*, 887 F.2d 546, 550 (5th Cir. 1989) (citation omitted). Thus, our standard of review is a "spectrum" not "static." *Fisher*, 624 F.3d at 718.

## IV.   Analysis

Lewis contends that the trial court abused its discretion by declaring a mistrial because: (1) none of the jurors were legitimately unavailable; (2) the trial judge did not consider available alternatives to a mistrial; (3) the trial judge acted abruptly and erratically; (4) the trial judge did not inquire into the reasoning behind the scheduling conflicts for two of the jurors; and (5) the prosecution benefitted from the mistrial.

In terms of available alternatives, Lewis argues that: (1) the jurors could have stayed as late as necessary to finish Lewis's trial because it is commonplace for Orleans Parish criminal juries to deliberate late into the night or early next morning hours; and (2) the trial court failed to inquire as to whether the jurors could have returned after a recess of two or more days. Further, Lewis contends that the trial judge appeared unaware that jeopardy

had attached. Before addressing Lewis's contentions, we first consider the degree of deference owed to the trial court.

## A. Deference

Lewis contends that the highest degree of deference to the trial court should not apply in these circumstances. First, he argues that the prosecutors at his trial benefited from the mistrial because they sought and effectively received a continuance. Lewis appears to invoke the strictest-scrutiny standard that applies when the prosecution acts in "bad faith" or to "harass" or "achieve a tactical advantage over" a defendant. *Arizona*, 434 U.S. at 508. Second, Lewis claims that the degree of deference is diminished by the trial court's lack of awareness that jeopardy had attached.

We conclude that the strictest-scrutiny standard does not apply here. The record indicates that the prosecution properly moved for a continuance twice. In both instances, there was no improper benefit or bad faith.[6] *See Arizona*, 434 U.S. at 508. Specifically, the prosecutor clarified for the trial court that she had not moved for a mistrial and had been ready to proceed with trial. Defense counsel had similarly requested a continuance while discussing the unavailable witness. The trial court declared a mistrial sua sponte and refused to grant any continuances. Thus, we are not persuaded by Lewis's request for the strict scrutiny standard.

We agree that the highest degree of deference cannot be afforded to the trial court where, as here, the trial judge was not aware that jeopardy had attached before declaring a mistrial. The trial court transcript shows a clear

---

[6] We acknowledge that there are troubling instances in the record of potential prosecutorial misconduct on direct appeal. Because our decision hinges on the trial court's and district court's actions, we only address the prosecutor's conduct as it relates to the declaration of a mistrial and the underlying trial transcript.

failure to realize that jeopardy had attached. Specifically, the trial court appears to have conflated the standards for a bench and jury trial. The trial court remarked that jeopardy was not a "worry" because it "attaches when" a witness is sworn in. That is incorrect. For a *bench* trial, jeopardy does not attach "until the first witness is sworn." *Willhauck v. Flanagan*, 448 U.S. 1323, 1326 (1980) (citing *Crist*, 437 U.S. at 37 & n.15; *Serfass v. United States*, 420 U.S. 377, 388 (1975)). But for a *jury* trial, as here, jeopardy does not attach "[u]ntil a jury is empaneled and sworn." *Id.* (citing *Crist*, 437 U.S. at 38). Defense counsel flagged this error for the trial court. Unfazed, the trial court repeated that the parties "don't have to worry about" jeopardy and immediately declared a mistrial.

This court has yet to address a case in which the trial court declared a mistrial based on the mistaken assumption that jeopardy had not attached. Our precedent suggests that appellate deference in such circumstances is reduced. *See United States v. Starling*, 571 F.2d 934, 941 (5th Cir. 1978). In *Starling*, the trial court's "total lack of awareness of the double-jeopardy consequences of" a mistrial meant that "the very basis for appellate deference to the court's determination that a mistrial was required [was] diminished beyond the point of significance." *Id.* The basis for mistrial in *Starling* was the trial court's uncorroborated belief that the jurors developed "resentment" against the defendant because he conversed with a juror. *Id.* at 939. When the trial court in *Starling* declared a mistrial, it showed a "total lack of awareness of the double-jeopardy consequences" by (1) failing to give the parties "an opportunity to [object or] address the possibility of bias or the need for a mistrial," (2) failing to consider any alternatives, and (3) reaching its decision after "only a brief and confusing exchange" with the jury. *Id.* at 941.

Unlike *Starling*, the trial court in this case made some effort to inquire into the scheduling issues with two jurors and gave the parties some time to

object and propose alternative solutions. Therefore, we must carefully straddle the line between the degrees of deference owed to the trial court's decision to declare a mistrial. We look for any basis in the record to support the trial court's decision while also enunciating "the correct law on the record facts." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 338 n.5 (5th Cir. 2004). In doing so, we must resolve all doubts in favor of the accused. *Downum v. United States*, 372 U.S. 734, 738 (1963) ("We resolve any doubt in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion." (internal quotation marks and citation omitted)).

## B. Juror Availability and Alternatives

Lewis argues that two jurors were not "legitimately unavailable" to participate in trial because scheduling conflicts that consist of work and parental responsibilities are not "so emotionally" taxing so as to prevent their continued jury service.

"The proposition that the legitimate unavailability of a juror is 'manifest necessity' permitting a retrial has been widely accepted, in varying formulations." *Cherry*, 635 F.2d at 419 (collecting cases). In *Cherry*, a juror could not continue with trial because his parent had died, thus the juror's "uninterrupted service [became] impractical." *Cherry*, 635 F.2d at 417. "Common experience" indicated in *Cherry* that the juror was "legitimately unavailable" to continue deliberating in trial. *Id.*; *see also Campbell*, 544 F.3d at 583.

The scheduling concerns of two jurors in Lewis's trial fall short of our standard for manifest necessity. To be sure, realtor appointments, angry clients, and the need to pick up and watch over one's children are important. But they are not the sort of emergencies that took place in *Cherry* (death of a parent), *Holley* (significant illness that is confirmed by a doctor), or *Campbell*

(inability to understand English). "Common experience" indicates that none of the jurors were "legitimately unavailable" to continue deliberating in Lewis's trial. *See Cherry*, 635 F.2d at 417; *Campbell*, 544 F.3d at 583. In fact, the trial court appeared to recognize the importance of juror unavailability when scheduling issues were previously addressed in that same trial, as two jurors were excused during voir dire because they could not attend a second day of trial. To be clear, we are not attempting to delineate the outer bounds of what counts as "unavailable."

Lewis's case is akin to *Grandberry v. Bonner*, where the trial court declared a mistrial because a juror became ill but failed to inquire into the seriousness of the illness. 653 F.2d 1010 (5th Cir. 1981). In *Grandberry*, we reversed the trial court because the juror never "indicate[d] that his condition was so serious that he felt unable to continue his jury service." *Id.* at 1015. Instead, the juror stated that he would feel "okay" if he were to "simply take his blood pressure medication," which was easily retrievable. *Id.* And by ignoring these remarks, that trial court failed to give "careful consideration of the question [of] whether [the juror's] condition was sufficiently serious to render him incapable of further service as a juror." *Id.* at 1014-15; *compare id.*, *with United States v. Holley*, 986 F.2d 100, 103-04 (5th Cir. 1993) (affirming trial court's declaration of a mistrial because juror became ill, and her doctor confirmed that she "would not be able to continue" service), *and Campbell*, 544 F.3d at 581 (affirming trial court's finding of mistrial where the jury notified the court that a juror spoke limited English and may not have understood "the evidence presented during trial."). Thus, our precedent indicates that a juror's unavailability must be "clearly so serious that [the juror] could not continue to serve." *Grandberry*, 653 F.2d at 1015.

Similar to *Grandberry*, the trial court failed to confirm whether the jurors' scheduling issues were "sufficiently serious" to render them

incapable of service. *Grandberry*, 653 F.2d at 1014. For example, the first juror never indicated that she could not serve as a juror despite her real estate appointments. To the contrary, she said that she had not "yet" been able to find a substitute. And the trial court neither confirmed whether the juror could find a replacement, nor whether the appointments would, in fact, preclude her from serving on the jury. The same is true for the second juror. The trial court did not confirm whether the juror could make other arrangements for the next day or reschedule. Further, the trial court did not inquire into why a third juror was suddenly unavailable.

To be clear, we are not requiring a trial court to ask any magic words. Rather, the trial court should at the very least inquire about the juror's availability for trial or a continuance for purposes of the manifest necessity standard. As Bickham conceded during oral argument, a juror's scheduling concerns, without more, do not supersede a defendant's constitutional rights with respect to double jeopardy. Resolving all doubts in Lewis's favor, the jurors' scheduling issues are not sufficiently serious to make their service impractical, and thus the trial court erred in declaring a mistrial. *Downum*, 372 U.S. at 738.

In addition, Lewis contends that the trial judge failed to consider available alternatives to mistrial. For example, one alternative was ordering a continuance of the trial for one to two days.[7] A trial judge "act[s] within his sound discretion in rejecting possible alternatives and granting a mistrial, if reasonable judges could differ about the proper disposition." *Fay v. McCotter*, 765 F.2d 475, 478 (5th Cir. 1985) (quoting *Cherry*, 635 F.2d at 418-19).

_____

[7] In addition, Lewis suggests a second alternative: allowing for the trial to continue and start opening arguments at 4:00 p.m. Because we find one alternative sufficient, we do not speculate on whether the trial court could have finished trial late that night or early the next morning.

Though alternatives to a mistrial must be considered, "the Constitution does not require canvassing of specific alternatives or articulation of their inadequacies." *Cherry*, 635 F.2d 414, 418. Indeed, a "state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed . . . to articulate on the record all the factors which informed the deliberate exercise of his discretion." *Arizona*, 434 U.S. at 517; *see also Renico*, 559 U.S. at 779.

In denying the prosecution's motion for a continuance, the trial court lacked a "manifest necessity" for declaring a mistral. *See Arizona*, 434 U.S. at 517. The court reasoned that it was the last day of trial for some jurors, and the court did not want them to return if they did not have to. In light of the moderate deference owed in this circumstance, the trial court's stated reason for rejecting the continuance is meritless. While it is possible that the trial court assumed that two jurors might not be available even after a continuance, that justification would not require a mistrial.

This is not a case in which the trial court exercised "sound discretion" in declaring a mistrial. *Arizona*, 434 U.S. at 514. Contrary to the trial court's belief, the general end date for jury service does not justify a mistrial, even for a one-day trial. *See Crist*, 437 U.S. at 36 ("[A] jury should not be discharged until it had completed the solemn task of announcing a verdict."); *cf*. LA. CODE. CRIM. PROC. art. 409.5(C) (providing that, even if a juror is selected for a one-day trial, "[a]ny juror selected to serve on a jury shall serve until he is discharged from the jury"). Thus, the estimated duration of service neither creates a "legal defect in the proceedings" nor does it make it "physically impossible" for the trial to proceed. *See* LA. CODE. CRIM. PROC. art. 775(3), (5). And under the Double Jeopardy Clause, it is particularly unreasonable that the trial court failed to grant a continuance, when it did not consider whether the jurors' scheduling conflicts were

"clearly so serious" that they could not serve as a juror. *Grandberry*, 653 F.2d at 1015.

Our conclusion is reinforced by the fact that the same trial court was perfectly willing to entertain a non-consecutive-day recess the very next day after assembling a third jury, but refused to consider it for the second jury. We find that the trial court should have granted a continuance in this case. *See Arizona*, 434 U.S. at 514. The trial court's stated reasons do not support its rejection of the continuance—and the record does not suggest any viable reasons why the trial judge rejected this option. For these reasons, we must reverse the district court's finding that the trial court had a manifest necessity for a mistrial.

## C. Timing of Trial Court's Decision

Lewis also claims that the trial court's declaration of mistrial was abrupt and erratic. While the timing is an important consideration, we find that it was not abrupt or erratic in this case. *See Grandberry*, 653 F.2d at 1014-16 ("[T]he precipitate character of the trial judge's decision" may "indicate that the judge had not devoted time or thought to alternatives or carefully considered the defendant's" jeopardy rights "before declaring a mistrial.").

We have upheld declarations of mistrial where the trial court reaches its decision after (1) some inquiry and deliberation; (2) some consultation with counsel; and (3) providing the parties with at least the opportunity to object. *Cherry*, 635 F.2d at 418; *see Bauman*, 887 F.2d at 552 (finding that the trial court "did not act in an abrupt, erratic, or precipitate manner" where it "consulted with the counsel of all defendants"); *Campbell*, 544 F.3d at 583 (finding that the trial court did not act abruptly where it "solicited the opinion of both the Government and [the defendant], and its ultimate decision was neither abrupt nor precipitate").

No. 23-30086

In contrast, this court has reversed where the trial court declared mistrial so quickly that the parties had no time to object or address the trial court's concerns. *See e.g.*, *Grandberry*, 653 F.2d at 1016 (trial court acted precipitously where it declared mistrial "only a matter of minutes" after a juror conveyed illness "without addressing either counsel and without pausing long enough for an objection to be registered"); *Starling*, 571 F.2d at 934 (trial court showed "a total lack of awareness of the double-jeopardy consequences" because it declared mistrial "after only a brief and confusing exchange between the court and the jury").

In light of our precedent, the trial court did not act in an abrupt, erratic, or precipitate manner. Here, the record shows the trial court repeatedly asked the parties for suggestions on how to resolve the jurors' logistical concerns. The court also provided the parties with a recess to consider alternatives. Further, the record shows that the parties were able to lodge their respective objections to the trial court's sua sponte declaration of mistrial.

Although we find that the trial court failed to properly consider juror unavailability and thus, improperly rejected the continuance, the trial court did not act precipitously in declaring mistrial. Instead, the record indicates that Lewis should be granted habeas relief because double jeopardy had attached and there was not a manifest necessity for a mistrial.[8]

---

[8] The parties also dispute whether *Crawford v. Cain*, 55 F.4th 981, 994 (5th Cir. 2022) requires Lewis to demonstrate factual innocence to seek habeas relief. This court has vacated the holding in *Crawford* and it is no longer good law. *See Crawford v. Cain*, 72 F.4th 109, 109 (5th Cir. 2023) (granting petition for rehearing en banc). Therefore, we do not address that issue here.

## V.   Conclusion

The jurors' scheduling conflicts do not rise to the level of "legitimate unavailability" that this court has endorsed in the past to allow for a mistrial. Because the trial court failed to confirm whether these concerns were sufficiently serious, and it failed to comprehend that jeopardy had attached, there was no manifest necessity for its' mistrial declaration. Under these circumstances, reasonable judges could not differ "about the proper disposition" of the case. We therefore conclude that Lewis's third trial is constitutionally barred by the Double Jeopardy Clause and order that the writ of habeas corpus should be granted.

REVERSED and REMANDED for issuance of the writ.