Robert V. SHAW, Plaintiff–Appellant,

v.

Larry NORRIS, Director, Arkansas Department of Correction, Defendant–Appellee.

No. 93–3888.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1994.

Decided Aug. 26, 1994.

D.P. Marshall, Jr. Jonesboro, AR, argued, for appellant.

Olan W. Reeves, Asst. Atty. Gen., Little Rock, AR, argued, for appellee.

Before LOKEN, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Robert Shaw appeals from a final judgment entered in the United States District Court for the Eastern District of Arkansas [1] denying his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254 (1988). Shaw contends that the district court erred in denying him habeas relief on the ground that the trial judge in his state criminal trial dismissed the jury prematurely, thereby sub-

1. The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas, trying the case by consent of the parties pursuant to 28 U.S.C. § 636(c).

jecting him to double jeopardy upon retrial. We affirm.

## I. BACKGROUND

Shaw was charged by the State of Arkansas with kidnapping, rape, and attempted murder. At the conclusion of the evidence during a one-day trial on May 15, 1989, the trial court instructed the jury on all three counts. The jury commenced its deliberations shortly after 6:00 p.m. During the next three hours, the jury was provided a meal and bathroom breaks because restroom facilities were not provided in the jury room.

Shortly after 9:30 p.m., the trial judge was informed that one of the jurors was ill. He immediately called the jury into the courtroom, and the following colloquy took place:

THE COURT: Mr. Adams, had asked me what I was going to do with the jury just a few moments ago and I said I'd continue to let them work and then just a moments [sic] later I had heard that Mr. Brown you might not be feeling well?

MR. BROWN, JUROR: I feel better now since I went down there and heaved a few times.

THE COURT: All right. Do you need anything in the way of medication or anything?

MR. BROWN, JUROR: I don't think so.

THE COURT: All right. Have you had some stomach problems today? Has that been the problem?

MR. BROWN, JUROR: Prostate gland.

THE COURT: Oh, all right. You're familiar with it?

MR. BROWN, JUROR: Yeah.

THE COURT: I just, I didn't want you to endanger your health. If you feel comfortable with it then that's fine. But that's the reason I asked you out is that I was concerned about your health and such as that. Since I've got you here it's 9:30. I made a note, a rough idea about 6:00 o'clock when you retired. Listen very, very carefully to me, Ms. Rankin. You've told me that you were the elected foreman of the jury. Has the jury reached a verdict on any issue?

MS. RANKIN, FOREMAN: Yes, sir.

THE COURT: All right. Do you feel like you're making some progress? I don't want to know what it is or anything—

MS. RANKIN, FOREMAN: Just one of them. So—

THE COURT: So one of three issues?

MS. RANKIN, FOREMAN: Right.

THE COURT: Do you feel like the jury is still making progress?

MS. RANKIN, FOREMAN: We've sort of come to a stop. I don't know how to—

THE COURT: Without telling me which way it stands, just numerically five/seven.

MS. RANKIN, FOREMAN: Six and six.

THE COURT: That's about as evenly—

MS. RANKIN, FOREMAN: And nine and three.

THE COURT: And what?

MS. RANKIN, FOREMAN: Nine and three.

(Appellant's Addend. at A–6—A–7). The jury then retired for further deliberation. At 10:15 p.m., the jury returned to the courtroom whereupon the following exchange ensued:

THE COURT: Madam Foreman, has the jury reached a verdict on any issue?

MS. RANKIN, FOREMAN: One and the others are still not agreeable and Mr. Brown is—

THE COURT: Not feeling well.

MS. RANKIN, FOREMAN: Well, having some problems and—

THE COURT: All right. Perry County's gotten its money worth from you folks today and we thank all of you so much. Mr. Miles, if you'll go up and get the instructions if you brought those out with you. And let me review the verdict forms. Thank you, sir. "We, the Jury, find Robert Shaw not guilty of Attempted Capitol [sic] Murder." That's signed by Kathy Rankin as foreman of the jury. For whatever benefit it may be to us, Ms. Rankin and I'm not going to keep you all but a moment, on which of the other issues, I mean which one were you six/six?

MS. RANKIN, FOREMAN: Well, we went in and deliberated some more and we came back 8/4 and 10/2.

THE COURT: On which one of the issues? I just think the lawyers might appreciate it.

MS. RANKIN, FOREMAN: On eight and four?

THE COURT: Yes, ma'am.

MS. RANKIN, FOREMAN: The rape. And ten and two the kidnapping.

THE COURT: Which way were you the eight?

MS. RANKIN, FOREMAN: Oh, eight not guilty and ten not guilty.

THE COURT: All right. Very well.

(Appellant's Addend. at A–10—A–11).

The court then dismissed the jury, although a mistrial was not formally declared. At no time did Shaw lodge an objection to the court's questioning of the forewoman or the subsequent discharge of the jury.

The state then sought to retry Shaw on the remaining counts. Shaw moved to dismiss the rape and kidnapping charges on the basis that retrial violated his double jeopardy rights. The trial court denied the motion, and Shaw was tried and convicted on both counts. On appeal to the Supreme Court of Arkansas, Shaw contended that the trial judge violated Ark.Code Ann. § 5–1–112 [2] by dismissing the jury without the consent of defense counsel and that therefore the sec-

ond trial was invalid. *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468, 469–70 (1991). The court determined that the trial judge did not abuse his discretion in dismissing the jury and affirmed Shaw's rape conviction but reversed the kidnapping conviction on the basis of insufficient evidence. *Id.* 802 S.W.2d at 469–71. However, Shaw did not raise a Fifth Amendment double jeopardy argument at any time before the state courts. The state supreme court analyzed the issue only on the basis of the state statute. *Id.* 802 S.W.2d at 469–70.

▪ Shaw then filed the instant petition for a writ of habeas corpus, alleging that the trial judge prematurely dismissed the jury *sua sponte*. Shaw asserts that the three hours the jury was allowed to deliberate is constitutionally insufficient to support the declaration of a mistrial on the basis of juror deadlock and that the juror the court deemed ill was capable of further deliberation. In sum, Shaw argues that the above factors did not constitute "manifest necessity" for the dismissal of the jury prior to a verdict being rendered, and as a result, his second trial violated the Fifth Amendment's prohibition against double jeopardy.[3]

The magistrate judge held that the state trial judge's determination to declare a mistrial was entitled to a great deal of deference under applicable law. The magistrate judge observed that the record contained ample

---

**2.** Ark.Code Ann. § 5–1–112 (Michie 1987) provides in pertinent part:

A former prosecution is an affirmative defense to a subsequent prosecution for the same offense under any of the following circumstances:

. . . .

(3) The former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn or, if trial was before the court, after the first witness was sworn, unless the termination was justified by overruling necessity.

**3.** "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

We note that Shaw's Fifth Amendment claim is probably procedurally defaulted. Shaw presented to the state courts a double jeopardy claim based solely upon the state statute. Shaw failed to present a Fifth Amendment double jeopardy claim to the state court on direct review of his

conviction or in an action for postconviction relief. *See* Ark.R.Crim.P. 37. There is not a single mention of the Fifth Amendment in the opinion of the Supreme Court of Arkansas. It is a fundamental axiom of federal habeas law that a petitioner must raise his claims in state court before presenting them to the federal courts for review. *Battle v. Delo*, 19 F.3d 1547, 1552 (8th Cir.1994); *Cox v. Lockhart*, 970 F.2d 448, 454 (8th Cir.1992). When a habeas petitioner fails to present his claims to the state courts, the claims are procedurally barred unless the petitioner can show cause and prejudice. *Sawyer v. Whitley*, —— U.S. ——, —— – ——, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750–51, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir.1994). However, the state failed to raise the procedural bar in the district court, therefore we proceed to the merits of Shaw's petition.

evidence that the jury was in fact dead-locked, that one juror was in ill health, and that the state trial judge's decision to declare a mistrial was not arrived at through improper motives, such as a weakness in the prosecution's evidence. The magistrate judge concluded that because the state established "manifest necessity" for the dismissal of the jury prior to a verdict being reached, the second trial did not subject Shaw to double jeopardy, and accordingly the magistrate judge dismissed Shaw's petition.

## II. DISCUSSION

 Shaw's petition asserted that the trial judge violated the Fifth Amendment by prematurely dismissing the jury. The Fifth Amendment's prohibition against double jeopardy protects a defendant against a second prosecution for the same offense after an acquittal or a conviction, as well as from multiple punishments for the same offense. *United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993); *United States v. Cavanaugh,* 948 F.2d 405, 414 (8th Cir.1991). However, a " 'retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused.' " *United States v. Dixon,* 913 F.2d 1305, 1310 (8th Cir.1990) (quoting *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978)). Where "manifest necessity" is present in the record, the dismissal of the jury prior to a verdict does not prohibit a subsequent retrial of the accused on Fifth Amendment grounds. *United States v. Perez,* 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824). In *Perez,* the Supreme Court determined that "manifest necessity" encompasses instances of juror deadlock. *Id.* at 579–80.

██ The parties to this appeal have devoted considerable time and effort attempting to persuade us whether "manifest necessity" was present in the case at bar. In *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982), the Court held that "[w]here the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar is the 'manifest necessity' standard...." In *Unit-*

*ed States v. Ford,* 17 F.3d 1100, 1102 (8th Cir.1994) (internal citations omitted), we held:

> If a mistrial is declared over the objections of a criminal defendant, double jeopardy will prevent a second trial unless the mistrial was a manifest necessity. If the defendant does not object, double jeopardy is not implicated unless the conduct giving rise to the mistrial was intended to provoke the defendant to move for a mistrial.

In the present case, Shaw did not object to the trial court's dismissal of the jury, and he was not provoked into moving for a mistrial. Shaw, however, asserts for the first time in his reply brief that he was effectively denied an opportunity to object because the trial court announced the verdict and deadlock unexpectedly and because any objection after that point would have been fruitless. The decision to mistry the case was made *sua sponte* and without consultation with counsel. Some courts have held that a defendant's failure to object when an opportunity to object existed constitutes a waiver of the right to later bring a double jeopardy claim. *See United States v. DiPietro,* 936 F.2d 6, 9–10 (1st Cir.1991); *Camden v. Circuit Ct. of the Second Jud. Circuit,* 892 F.2d 610, 614 (7th Cir.1989). However, we decline to address that issue here because the parties have neither briefed nor argued its merits in this appeal. Because there exists some question about whether Shaw had an adequate opportunity to object, we will proceed with a manifest necessity analysis.

In attempting to define "manifest necessity," the *Washington* Court first noted that the standard does not readily lend itself to any rigid, mechanical application; instead the test must be applied to the unique facts and circumstances which confront the trial court. 434 U.S. at 506, 98 S.Ct. at 830. The Court stated that:

> [T]he strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused.

At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered a classic basis for a proper mistrial.

*Id.* at 508–09, 98 S.Ct. at 832. In instances of juror deadlock, "the trial judge's decision to declare a mistrial is [to be] accorded great deference by a reviewing court." *Id.* at 510, 98 S.Ct. at 832.

■ The *Kennedy* Court bolstered this rationale in holding that "the hung jury remains the prototypical example" of circumstances in which "manifest necessity" will be found. 456 U.S. at 672, 102 S.Ct. at 2087. Indeed, this conclusion seems logical in view of the fact that the Supreme Court first articulated the "manifest necessity" test in a case where a mistrial was declared because of juror deadlock. *Perez,* 22 U.S. at 579–80. This court must uphold a trial court's decision to grant a mistrial if, after reviewing the entire record, we conclude that the trial judge exercised "sound discretion" in reaching that conclusion. *Washington* 434 U.S. at 514, 98 S.Ct. at 834; *see also Dixon,* 913 F.2d at 1311 (holding that appellate court "must uphold the district court's finding of 'manifest necessity' for the sua sponte declaration of a mistrial if, upon review of the entire record, [it is] satisfied the district court exercised its 'sound discretion' in making that determination.").

Here the trial court was informed by Forewoman Rankin at 9:30 p.m. that the jury had "sort of come to a stop" and that the split on one of the counts was "[s]ix and six." (Appellant's Addend. at A–7). Without giving them a formal *Allen*[4] charge, the trial court encouraged all the jurors to reexamine their positions and attempt to resolve their differences and reach a verdict on all counts. When the jury was brought in again at 10:15 p.m., the judge was told that the jury was "still not agreeable" on two counts before he took the verdict on the one count and dismissed the jurors. (Appellant's Addend. at A–11). The jury had already deliberated for approximately three and a half hours. The trial judge concluded from his unique vantage point that further deliberations would

be futile. In these circumstances, we conclude that "manifest necessity" was present because of juror deadlock, and the trial court did not abuse its broad discretion in dismissing the jury.

■ Furthermore, the record indicates that Mr. Brown's illness was also a factor that the state trial judge considered in his decision to curtail deliberations and dismiss the jury. We believe that instances in which a mistrial is declared because of juror illness are similar in kind and nature to those involving juror deadlock, and for the same rationale as stated above, trial courts in these circumstances are to be afforded great deference. *See United States v. Holley,* 986 F.2d 100, 103 (5th Cir.1993). In *Holley,* a juror became ill one day after the jury was empaneled. 986 F.2d at 103. The trial judge declared a mistrial without a defense objection after determining that the juror's condition was unlikely to improve. *Id.* The Fifth Circuit stated that because "the trial court is most familiar [with the] facts surrounding a mistrial, the judge's mistrial order is given the 'highest degree of respect.' " *Id.* at 104 (citation omitted). The *Holley* court ruled that the trial court did not abuse its discretion in determining that "manifest necessity" was present because of the juror's illness. *Id.*

In this case, it is clear that the trial judge attempted to discern whether Mr. Brown was able to continue deliberations based upon the colloquy the judge had with him during the 9:30 p.m. session. Mr. Brown had already "heaved" several times, and the trial judge was able to view firsthand Mr. Brown's condition as he responded to the judge's questions. Further, when the jury was recalled into the courtroom at 10:15 p.m., Forewoman Rankin informed the judge that Mr. Brown was still "having some problems." (Appellant's Addend. at A–11). In these circumstances, the state trial judge's decision must be afforded special deference due to his unique ability to view Mr. Brown, and he should not now be second-guessed. The record again reveals that "manifest necessity" was present due to juror illness, and the trial

4. *Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).

court did not abuse its discretion in dismissing the jury.

In the present case, we find that manifest necessity existed for declaring a mistrial on the independent basis of either juror deadlock or juror illness. When these circumstances are found in tandem, we have no difficulty concluding that the manifest necessity standard is satisfied and that the trial judge exercised sound discretion in dismissing the jury.

## III. CONCLUSION

For the reasons enumerated above, the judgment of the district court denying Shaw's petition for a writ of habeas corpus is affirmed.