# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2010

No. 10-30424

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DARIUS NATHANIEL FISHER,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before SMITH, WIENER, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This appeal arises out of a mistrial that the district court declared *sua sponte* after two essential prosecution witnesses became unavailable to testify as scheduled. The record demonstrates that there was no manifest necessity for the mistrial. Accordingly, we REVERSE the district court's denial of Fisher's motion to dismiss the indictment on double-jeopardy grounds and we render a judgment of dismissal.

## I.

Fisher, along with other individuals, was indicted on narcotics charges, with their trial scheduled to begin on Monday, September 28, 2009. The trial was expected to last two weeks, with the government's case lasting one week.

No. 10-30424

On September 28, the district court empaneled the jury. After dismissing the jury for the day, the court addressed Fisher's concern that the government had not produced all relevant discovery. Although the court found that the complaint was baseless, it nonetheless granted a continuance until Thursday, October 1, 2009 so that Fisher's attorney could review the discovery, which the government had produced, but mislabeled. The government did not object.

On Wednesday, September 30, 2009, the government sent the district court an e-mail, explaining that the two-day continuance had created scheduling difficulties for two of its witnesses. These witnesses were to testify about their analyses of the seized drugs. Both the district court and magistrate judge referred to them as "essential witnesses." One of the witnesses was scheduled to attend a training meeting from October 4 to October 9. The other witness was scheduled to testify in another trial on October 6. The government acknowledged that this witness had been subpoenaed in Fisher's case first. Thus, the government told the district court, "It is believed that . . . he will have to appear pursuant [to the subpoena in Fisher's case] before honoring any other subpoena subsequently served for the same time period." The government explained that, in light of these conflicts, it had scheduled both witnesses to testify on October 2; "[h]owever, there are witnesses who must testify [to establish chain of custody] before these chemists and we are not confident that the chemists will actually testify on Friday[, October 2]."[1]

When the district court reconvened on October 1, it explained that, on September 30, co-defendant Melvin Alexander had begun displaying bizarre

---

[1] The district court attached this e-mail as Exhibit D to its denial of Fisher's motion to dismiss the indictment.

2

No. 10-30424

behavior. Given this development, the court initially severed Alexander from the case so that the trial could proceed as to Fisher on October 2, while Alexander received a competency evaluation. The court observed that all were ready to proceed to trial the next day and the jury was already empaneled. The court altered this ruling, however, when the government objected. The government claimed that, because of the one-day delay caused by Alexander's condition along with Fisher's refusal to stipulate to the chain of custody of the seized narcotics and the reports of its two chemist witnesses, it "is not able to logistically get two forensic chemists to testify timely enough in this matter." The government added, "One, the DEA chemist is going to a trial in Virginia which is, as I mentioned before, a rocket docket case that they can't get a continuance on. The other is to attend a seminar conference that has impact on the laboratory's continued certification."

Although Fisher's counsel initially joined this objection to the severance, he withdrew his objection after conferring with Fisher, who wanted to "have his day in court." The court did not inquire about the scheduling conflicts of the witnesses or explore ways to reconcile those conflicts with the trial schedule. Instead, the court then told Fisher that it could not go forward with his trial, "unless [he is] willing to stipulate to the reports of the chemists and the aspect of chain of custody that they would testify to." Fisher declined to stipulate to the chain of custody and the reports. The court then stated that it would grant a continuance and defer its decision on severing Alexander until it had received his competency evaluation. Fisher's counsel objected, stressing that he was ready for trial and that his client wanted to proceed immediately. The court overruled the objection and granted a continuance of over seven months. Given

3

No. 10-30424

the length of the continuance, the court declared a mistrial *sua sponte*. The court explained that "the mistrial was not necessitated in any way by the government's action in any fashion nor by any defendant's intentional act. It was necessitated by the situation with Mr. Alexander's mental health."

Fisher then moved to dismiss the indictment on double-jeopardy grounds. In opposition, the government argued that the need to evaluate Alexander's mental health justified the mistrial and that Fisher had impliedly consented to the mistrial by failing to sufficiently object. The magistrate judge issued a Report and Recommendation denying the motion, finding that Alexander's condition justified the mistrial. The magistrate judge also found that the district court had allowed Fisher "a full right to be heard" on the propriety of the mistrial, "and, in fact, counsel requested that the trial proceed." The district court adopted the Report and Recommendation in its entirety, but added that Fisher's unfounded allegations of discovery abuse against the government also contributed to the need to declare a mistrial. In a separate ruling, the district court specifically found that Fisher's counsel had objected to the mistrial.

Fisher timely appealed. He also requested a writ of mandamus to stay his reprosecution pending the outcome of this appeal of the denial of his motion to dismiss the indictment. This court granted the writ because,

> [a]fter reviewing the transcript of the exchange between the court and counsel between September 28, 2009 and October 1, 2009, and considering the briefs of counsel, the court concludes that: 1) Defendant Darius Fisher has a colorable claim that the mistrial the court declared on October 1, 2009, was not manifestly necessary; and 2) Fisher has a colorable claim that the he did not impliedly consent to the grant of the mistrial.

4

No. 10-30424

## II.

We first address whether Fisher impliedly consented to the mistrial by failing to sufficiently object. "If a defendant does not timely and explicitly object to a trial court's *sua sponte* declaration of mistrial, that defendant will be held to have impliedly consented to the mistrial and may be retried in a later proceeding." *United States v. Palmer*, 122 F.3d 215, 218 (5th Cir. 1997) (citation omitted). This is not a bright-line rule; it is a case-by-case determination. Our guiding standard for these determinations is whether the objection gave the court the opportunity to consider and resolve the concern. *See Puckett v. United States*, 129 S. Ct. 1423, 1428 (2009) (explaining that the purpose of timely objections is to "give[] the district court the opportunity to consider and resolve them"); *United States v. Williams*, 985 F.2d 749, 755 (5th Cir. 1993) ("In determining the sufficiency of objections we apply the general principle that an objection which is ample and timely to bring the alleged . . . error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to . . . preserve the claim for review." (internal quotation marks and citations omitted) (ellipses in original)). Here, the very judge who presided over the hearing found that Fisher had sufficiently objected: "Prior to declaring a mistrial, the Court provided all counsel with the opportunity to make any suggestions or objections and place any argument on the record they wished—only counsel for Darius Fisher did." We see no basis to disregard the judge's written finding, based on her firsthand observations that Fisher had given her a sufficient opportunity to consider his opposition to the mistrial. Accordingly, we hold that there was no implied consent to the mistrial. Thus,

5

No. 10-30424

we must determine whether the Double Jeopardy Clause of the Fifth Amendment permits the reprosecution of Fisher.

The Double Jeopardy Clause states, in relevant part, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. When a defendant does not consent to a mistrial, the Clause permits reprosecution only if there was manifest necessity for the mistrial. *See Arizona v. Washington*, 434 U.S. 497, 505 (1978). "Manifest necessity does not mean absolute necessity that a judge declare a mistrial; we assume that there are degrees of necessity and we require a high degree before concluding that a mistrial is appropriate." *Cherry v. Dir., State Bd. of Corr.*, 635 F.2d 414, 418 (5th Cir. 1981) (en banc) (citing *Washington*, 434 U.S. at 506) (internal quotation marks omitted). Our determination of manifest necessity is not cabined by the explanations that the trial court has explicitly set forth. *See Washington*, 434 U.S. at 516-17. Rather, the court is free to scrutinize the entire record. *See United States v. Bauman*, 887 F.2d 546, 550 (5th Cir. 1989). The prosecutor shoulders the heavy burden of demonstrating manifest necessity. *Washington*, 434 U.S. at 505.

Over three decades ago, the Supreme Court explained that the standard of review in such cases is not static, but rather, it varies depending on the cause of the mistrial. *See id.* at 507-08. At one end of the spectrum, broad deference is appropriate for jury-bias cases because the trial judge is best positioned to assess the relevant considerations. *Id.* at 513-14. For the same reason, appellate courts must confer broad discretion in cases involving potentially deadlocked juries. *Id.* at 509; *see also Renico v. Lett*, 130 S. Ct. 1855, 1863 (2010). Another reason for this highly deferential standard is the concern that, "[i]n the absence of such

6

No. 10-30424

deference, trial judges might otherwise 'employ coercive means to break the apparent deadlock,' thereby creating a 'significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors.'" *Id.* (citing *Washington*, 434 U.S. at 509-10). At the other end of the spectrum, "strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence." *Washington*, 434 U.S. at 508 (footnote omitted); *cf. Cherry*, 635 F.2d at 418-19 n.6 (citations omitted) (recognizing that the standard of review can vary from the "highest degree of respect" to the "strictest scrutiny" depending on the reason for the mistrial (internal quotation marks and citations omitted)). Thus, our first task is to determine the correct standard of review by identifying the cause of the mistrial. *See United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc) (explaining that the court, not the parties, determines the correct standard of review).

Here, the basis for the mistrial was the unavailability of the two government witnesses. This was a two-week trial that began on September 28 at 9:30 a.m. The court empaneled and then dismissed the jury at 4 p.m on that day. Next, the court granted, without objection from the government, a two-day continuance so that Fisher's counsel could review discovery that the government had produced, but mislabeled. Alexander's condition, which came to light on September 30, would have delayed the trial only one additional day, because the court had initially severed Alexander's trial and scheduled Fisher's trial to commence on October 2 at 9:30 a.m. Indeed, the court emphasized its readiness to proceed: "[S]o the record will be clear, that we already have a jury empaneled and we are scheduled to go forward. The jury would be coming back tomorrow.

7

No. 10-30424

So the record needs to be clear that all stood ready to go to trial. We have picked the jury. We have the jury empaneled. They are capable of coming back tomorrow." In short, the discovery issue and Alexander's condition delayed the trial only three days: the former pushed opening statements from September 29 to October 1, and the latter would have added just one more day, because the district court had initially severed Alexander's trial and scheduled opening statements for October 2. The court's willingness to proceed with the trial on October 2 demonstrates that it did not view Alexander's condition as warranting a mistrial.[2]

The October 1 hearing transcript, the Report and Recommendation, and the district court's denial of Fisher's motion to dismiss all demonstrate that the actual basis for the mistrial was the government's complaint that the three-day delay, coupled with Fisher's refusal to stipulate to the reports of the two witnesses and to the chain of custody of the seized narcotics, caused its witnesses to be unavailable. The transcript shows that, before the government complained about its witnesses' scheduling conflicts, the court had already severed Alexander's trial and wished to proceed with Fisher's trial on October 2. The Report and Recommendation, which the district court adopted in its entirety, states that Alexander's sudden behavioral developments delayed the trial so that "[b]y the time the court considered whether or not to sever the Fisher's trial from that of his co-defendants, essential government witnesses were no longer available to testify if the trial w[ere] to commence." The district court's denial of Fisher's motion to dismiss notes that the delays caused by Alexander's condition

_____

[2] This record evidence also belies the government's claim that Alexander's condition and the discovery issue contributed to the need to declare a mistrial.

8

No. 10-30424

and the discovery issue "divested the government of its ability to have witnesses available at the now, yet again, delayed trial." In sum, the record shows that, but for the government's concern about its witnesses' scheduling conflicts, the court would not have declared a mistrial. In addition, the district court refers to the witnesses as "essential," which no one disputes. Thus, because the basis for the mistrial was "the unavailability of critical prosecution evidence," the district court's decision is subject to "the strictest scrutiny." *Washington*, 434 U.S. at 508.

The government contends that strictest scrutiny does not apply and urges us to apply the highly deferential standard of review that we set forth in *United States v. Bauman*, 887 F.2d 546, 549 (5th Cir. 1989). *Bauman*, however, is inapposite, because the basis for that mistrial was potential jury bias. *See id*. at 548-49. Thus, in accordance with *Washington*, this court properly applied the highly deferential standard of review. *See id*. at 549-50. We further note that, when asked at oral argument, the government could not identify precedent from any circuit applying the highly deferential standard of review in an unavailable-government-witness case. Neither can we. In fact, our research reveals that the Second, Third, Fourth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits have recognized that strictest scrutiny applies in such cases, and we have not found any contrary authority. *See Baum v. Rushton*, 572 F.3d 198, 210 (4th Cir. 2009); *Walck v. Edmondson*, 472 F.3d 1227, 1239-40 (10th Cir. 2007); *United States v. Rivera*, 384 F.3d 49, 56 (3d Cir. 2004); *United States v. Berroa*, 374 F.3d 1053, 1057 (11th Cir. 2004); *United States v. Stevens*, 177 F.3d 579, 584 (6th Cir. 1999); *United States v. Millan*, 17 F.3d 14, 20 n.5 (2d Cir. 1994); *Shaw v. Norris*, 33 F.3d 958, 961 (8th Cir. 1994); *Camden v. Circuit Court of Second Judicial*

No. 10-30424

*Circuit, Crawford Cnty.*, 892 F.2d 610, 614 n.5 (7th Cir. 1989).

At oral argument, we also asked the government whether, under *Washington*, "strict[est] scrutiny" applies in cases involving the unavailability of a government witness. The government filed a letter, pursuant to Federal Rule of Appellate Procedure 28(j), directing us to a case that purportedly addresses this question:

> *Cherry v. Director, State Bd. Corrections*, 635 F.2d 414, 419 n.6 (5th Cir. 1981) (citing *Arizona v. Washington*, 434 U.S. 497, 508 (1978) for the proposition that "[t]he trial judge's disposition, however, should be given the 'strictest scrutiny' when the prosecutor brings about the mistrial in bad faith or for tactical reasons").

What the government fails to mention, however, is that *Washington*, on the very page that the government identifies, also states, "Thus, the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence . . . ." 434 U.S. at 508 (footnote omitted). This omission is odd, to say the least, given that we explicitly directed our question at government-witness unavailability, which was the reason for this mistrial.

Having established that the appropriate standard of review is strictest scrutiny, we now turn to what this standard requires. Although it does not appear that this court has had the opportunity to apply this standard since *Washington*, we did confront a similar issue five years earlier, in *McNeal v. Hollowell*, 481 F.2d 1145 (5th Cir. 1973). There, the trial court declared a mistrial because a co-indictee had invoked his privilege against self-incrimination, thereby depriving the prosecution of key testimony. *Id.* at 1151. This court held that there was no manifest necessity for two reasons. First, the court found that the trial judge "made no investigation into the reasons behind the prosecutor's request [for a mistrial]." *Id.* at 1152 (citing *United States v. Jorn*,

10

No. 10-30424

400 U.S. 470, 487 (1971) (footnote omitted)). According to the court, this violated the requirement that, "prior to granting or denying a motion for a mistrial," the trial court "should make a painstaking examination of all the facts and circumstances that underlie the request." *Id*. at 1152. "Only after such a careful investigation can a trial judge properly exercise his discretion [to declare a mistrial]." *Id*. (citations omitted). Second, the court found that the prosecution had contributed to the need for declaring a mistrial by proceeding with jury empanelment knowing that there was a risk that the co-indictee would not testify. *Id*. at 1151-52.

These considerations are consistent with the Supreme Court's decisions in *Jorn* and *Downum v. United States*, 372 U.S. 734 (1963), which *Washington* cited when setting forth the strictest-scrutiny standard. *See Arizona v. Washington*, 434 U.S. 497, 508 nn.24-25 (1978). In *Jorn*, the Court barred reprosecution because the trial judge had not properly determined whether there was manifest necessity. *See* 400 U.S. at 487. In *Downum*, the Court barred reprosecution because "[t]he prosecution allowed the jury to be selected and sworn even though one of its key witnesses was absent and had not been found." 372 U.S. at 735.

In addition, the Third and Tenth Circuits have looked to similar considerations when applying the strictest-scrutiny standard. In *United States v. Rivera*, the Third Circuit held that the Double Jeopardy Clause barred reprosecution because the district court did not carefully consider reasonable alternatives to a mistrial. *See* 384 F.3d 49, 56, 58 (3d Cir. 2004) ("Critically, a mistrial must not be declared without prudent consideration of reasonable alternatives." (citations omitted)). There, the key prosecution witness was

11

unavailable due to health issues. *See id.* at 52. The government suggested to the court that, before declaring a mistrial, the court should wait for the prognosis in order to determine when the witness will be available. *See id.* at 52-53. The trial court rejected this option and declared a mistrial because the delay might have caused a conflict with another trial on its docket. *See id.* at 56. The Third Circuit found no manifest necessity, explaining that "[s]cheduling considerations . . . do not outweigh the Court's duty to protect the defendants' constitutional right to be required to stand trial only once and are, by themselves, insufficient to support the declaration of a mistrial." *See id.* at 56 (citing *Jorn*, 400 U.S. at 479-80). Furthermore, the Third Circuit found that the trial court had failed to properly consider a reasonable alternative—determining the witness's unavailability before declaring a mistrial. *See id.* at 57. The court also emphasized, "The Government bears the burden of demonstrating that, 'under the circumstances confronting the trial judge, he had no alternative to the declaration of a mistrial.'" *Id.* at 56.

In *Walck v. Edmondson*, the trial court declared a mistrial over the defendant's objection when a key government witness went into labor. *See* 472 F.3d 1227, 1238-40 (10th Cir. 2007). The Tenth Circuit explained,

> This case, then, is analogous to *Downum*, where the prosecutor knew that the government's key witness had not been located but nonetheless allowed a jury to be selected and sworn. *See* 372 U.S. at 735, 83 S. Ct. 1033. The prosecutor here, like the prosecutor in *Downum*, proceeded in the face of a great risk of unavailability. Despite this great risk, the prosecution pushed on, and thus there was no manifest necessity.

*Id.* at 1239. According to the court, the trial judge should have "considered reading Ms. Moore's preliminary hearing testimony to the jury or, in the

12

alternative, granting a continuance until Ms. Moore was available as a witness." *Id*. at 1240. The court held, "Because the trial judge did not consider the foregoing viable alternatives, manifest necessity did not require a mistrial." *Id*.

In light of this precedent, we conclude that strictest scrutiny requires the government to show that the district court carefully considered whether reasonable alternatives existed and that the court found none. This follows our binding precedent in *McNeal v. Hollowell*, which requires that, "prior to granting or denying a motion for a mistrial," a trial judge "should make a painstaking examination of all the facts and circumstances that underlie the request." 481 F.2d 1145, 1152 (5th Cir. 1973). A painstaking examination of all relevant facts and circumstances naturally encompasses at least a careful consideration of any reasonable alternative to a mistrial. This requirement is also consistent with the approaches of the Third Circuit (requiring "no alternative to the declaration of a mistrial") and the Tenth Circuit (holding that trial judges must "sufficiently consider the viable and reasonable alternatives to a mistrial").

The government has not shown—nor does the record show—that the district court carefully considered reasonable alternatives before declaring a mistrial. As explained, the basis for this mistrial boils down to the scheduling conflicts of the government's witnesses, not Alexander's condition or the discovery issue. Specifically, the government explained that one witness was attending a quality-assurance meeting, from October 4 to October 9, that "has impact" on her laboratory's certification. The other was scheduled to testify at another trial on October 6. The government argued that there would not be enough time for these witnesses to testify on October 2 because Fisher would not stipulate to the chain of custody of the seized narcotics and to the admissibility

13

of their reports.

The district court accepted these representations without question, and it did not explore readily apparent ways to resolve the scheduling conflicts. The court should have asked questions: For example, how does attendance at a quality-assurance meeting that "has impact" on the certification of that witness's laboratory trump the court's subpoena and Fisher's double-jeopardy right? Is there anyone else who can testify or attend the meeting in her place? Can she attend the meeting at another time? How long would the chain-of-custody testimony take? Would Fisher be willing to allow the government to present such testimony out of order? Moreover, the witness's schedule suggested a reasonable alternative to a mistrial: she could testify on Monday, October 12, right before Fisher would have begun his case.[3] By that point, the government could have already presented the necessary authentication testimony, and the only delay to the trial schedule would have been the time needed for this witness's examination. The district court did not even inquire about this possibility, and there is nothing in the record showing that it would have been unworkable.

From the record, it also does not appear that the district court should have declared a mistrial because of the other witness's scheduling conflict. That is because the government had told the court, in its September 30 e-mail, that the witness must testify in this case before honoring the subpoena in the other case. We do not see how an admittedly subordinate subpoena outweighed Fisher's constitutional right to be free from being "subject for the same offense to be twice put in jeopardy . . . ." U.S. Const. amend. V. The district court did not ask the

---

[3] At oral argument, the government explained that, had the trial continued on October 2, its case-in-chief would have lasted from October 5 to October 9, and the remainder of the case would have taken the following week.

No. 10-30424

government about this. Furthermore, the court did not inquire whether anyone could testify in his stead in either case. Finally, as with the other witness, this witness's scheduling conflict also presented a reasonable alternative to a mistrial: because he was scheduled to testify on October 6 in the other case, he could have testified at Fisher's trial on any of the other four days during the week of October 5. Again, the district court did not explore this alternative, and the government has failed to point to anything in the record showing that it would have been unworkable.

What is particularly striking here is that, instead of assessing the government's claim of witness unavailability and exploring ways to resolve the scheduling conflicts, the district court immediately turned to Fisher's attorney and said,

> So unless, Mr. McCorvey, you were willing to stipulate to the reports of those chemists and the aspect of the chain of custody that they would testify to, then notwithstanding your having withdrawn your objection to [Alexander] being severed, then I cannot go forward with your client's trial because the government cannot get their witnesses here because of, first, this first set of delays that I allowed on Friday in order to allow you to get caught up on the materials that there was the confusion as to their existence, and now because of the delay because of Mr. Alexander's mental condition.

Fisher's attorney declined to stipulate, as was his right. Surprisingly, the district court claims that this was one of the causes of the mistrial: "the mistrial was seriously influenced [in part] by . . . [the attorney's] refusal to stipulate to the testimony of the two chemists . . . . Had counsel for Darius Fisher wished to avoid this result, his counsel could have agreed to stipulate to the chemists' reports." Similarly, the Report and Recommendation also states, "This

15

impediment [(witness unavailability)] to Fisher proceeding to trial immediately could have been removed by simple stipulation. That stipulation was refused." This is wrong. Fisher's decision to exercise his right to cross-examine chain-of-custody witnesses and experts should not influence—seriously or otherwise—a court's decision to declare a mistrial.

In short, the district court declared a mistrial because of the scheduling conflicts of the government's witnesses, and we agree with the Third Circuit that "[s]cheduling considerations . . . do not outweigh the Court's duty to protect the defendants' constitutional right to be required to stand trial only once and are, by themselves, insufficient to support the declaration of a mistrial." *United States v. Rivera*, 384 F.3d 49, 56 (3d Cir. 2004) (citing *United States v. Jorn*, 400 U.S. 470, 479-80 (1971)). The district court's duty to protect Fisher's double-jeopardy right required it to carefully consider reasonable ways to resolve the scheduling conflicts, something our trial courts routinely do. Nothing in the record, however, shows that the district court did so here. Thus, we hold that there was no manifest necessity.[4]

## III.

Because Fisher did not impliedly consent to the mistrial and because the district court did not carefully consider reasonable alternatives to a mistrial, we REVERSE the denial of Fisher's motion to dismiss the indictment and we render a judgment of dismissal.

---

[4] In light of this holding, we do not address any other considerations for strictest-scrutiny review under the Double Jeopardy Clause. *See Lyng v. Nw. Indian Cemetery Protective Ass'n.*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them" (citations omitted)).