# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-01621-SCT

*JEREMY HARRIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/04/2018 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| TRIAL COURT ATTORNEYS: | BRENDA FAY MITCHELL |
| | ROSHARWIN LEMOYNE WILLIAMS |
| | WALTER ERIC BLECK |
| | WILBERT LEVON JOHNSON |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | JUSTIN TAYLOR COOK |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| | LISA L. BLOUNT |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 04/08/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Jeremy Harris was convicted of attempted burglary of a dwelling with the intent to

commit larceny and was sentenced to a term of ten years, with five years suspended. Harris

argues that the trial court erred by granting a mistrial in his first trial. As the record from the

first trial was not made part of the record on appeal, the Court ordered that the record be

supplemented. The parties were directed to file supplemental briefing if they so chose, and each filed a supplemental brief.

¶2. On the entire record presented, we reverse the conviction and sentence, finding that the mistrial in Harris's first trial was not manifestly necessary. In the absence of manifest necessity, the constitutional protection against double jeopardy prohibited a second trial for the same crime.

### FACTS AND PROCEDURAL HISTORY

¶3. Jeremy Harris was indicted for attempted burglary of a dwelling. The State sought alibi-defense discovery if Harris intended to rely on an alibi defense. No alibi-defense discovery was offered by Harris. Harris's theory of defense was that there was no attempt to commit a criminal act because he was suffering from an epileptic seizure.

¶4. The first trial commenced on June 14, 2018. The State called Officer Mitchell, an officer of the Tunica County Sheriff's Department. Mitchell testified that he responded to an attempted burglary call at the property of Patricia Gidden. Gidden provided a description of the man who attempted to break into her home. Mitchell testified that, during the time he transported Harris to the Tunica County Jail, Harris repeatedly sang a song. Mitchell did not find it necessary to seek medical attention for Harris and did not find any medication on Harris when he was searched.

¶5. During Mitchell's testimony, the State asked to approach the bench, arguing that Harris's attorney had not properly disclosed an alibi defense.

> Your Honor, I'm a little concerned as it relates to the Defense and the direction
> that Mr. Johnson is going in because the proper disclosures were done, and we

2

requested a demand for alibi, and if he's gonna use medical reasons, we feel like we should have been made aware of that so we could prepare for it, and furthermore, I think he's trying to get out through other witnesses about this medical concern, and if he's concerned about medical, he should have probably did [sic] a mental evaluation on the guy.

The court replied that a request for an alibi defense involving medical reasons did not require a response. The court overruled the State's objection,[1] observing that it was not Harris's attorney's fault that the witness chose to respond to things about which he was not questioned.

¶6. The State next called Captain Bernadette Logan. Logan testified that, on her way to the scene, she first stopped at the location where Harris had been apprehended. Logan testified that Harris did not appear to require medical attention. When she arrived at Gidden's property, Logan observed damage to the front door. A window was broken, and scratch, scrape, and kick marks were observed on the front door. Logan testified that, when she initially questioned Harris, he was "acting inappropriately" and was singing. Logan recalled hearing during a preliminary hearing that Harris mentioned taking Dilantin for seizures.

¶7. The State next called Major Jammie Lewis, who apprehended Harris. Lewis testified that Harris was not compliant and refused to abide by orders of law enforcement. Lewis stated that, to his knowledge, Harris was not in the need of any medical assistance at the time of his apprehension and appeared to know what he was doing.

¶8. Gidden testified that she heard a "thud" and saw a man attempting to break into her house. She saw a man running into and kicking her door. She yelled at him to stop, but

---

[1] The State made no other objections as to any testimony about seizures or epilepsy.

instead, he placed his face against the glass and picked up a large urn by the front door. Gidden testified that she ran to her room and retrieved her shotgun. Gidden testified that Harris immediately stopped once the gun was brandished and walked away. Gidden testified that Harris did not appear to be in medical distress. After Gidden testified, the State rested.

¶9.    In his defense, Harris offered the following. He claimed that he had been diagnosed with epilepsy and averaged ten to twelve seizures a year. He first began having seizures around the age of seventeen. He had been treated for seizures by a doctor at Memphis Neurology Center and had been taking Phenobarbital and Dilantin since 2000. He testified that sometime later he was no longer able to get his medications. Harris recalled waking up on the day in question and taking a walk to get ice for his wife. The next thing he recalled was waking up the next day at the sheriff's department.

¶10.    Harris offered no other testimony. The State called no rebuttal witnesses and made no objections during his testimony.

¶11.    During the lunch break, the trial court noted that it was not aware of any state law that stated epilepsy was a defense. When the court inquired as to why there had been testimony regarding Harris's epilepsy, Harris's attorney stated that it was not used as a defense but to show that Harris did not have the required intent to commit the crime. The trial court inquired as to why the State had failed to object to the testimony on the ground of relevance. The State offered only that it had objected to the defense's failure to provide a proper alibi defense. The court allowed the parties the lunch hour to research and provide it with any relevant law as to epilepsy as a defense.

4

¶12. The State offered cases in which epilepsy had been compared to insanity. The State argued it had not been put on notice. In response to the court's asking what it should do, the State replied that

> because of the amount of testimony that the Defense attempted to pull out and did pull out as it relates to the defendant's medical condition, I feel like at this point the waters are really mirky [sic], and I believe that a mistrial should be granted.

Yet the State did not formally move for a mistrial, despite the trial court's inquiring as to whether a motion for mistrial was being made.

THE COURT: Are you so moving?

MS. McCRAY: I am not moving at this point, your Honor.

THE COURT: Well, now, don't bring up mistrial if you're not gonna move for one.

MS. McCRAY: I'm not moving for it at this point, your Honor.

¶13. Harris's attorney argued that he was not pleading an insanity defense and was not requesting an insanity instruction from the court. When the court informed the attorneys that it would deny Harris's request for an instruction on a directed verdict and would then instruct the jury with its standard instructions, the State finally moved for a mistrial. The court denied the mistrial and stated that it would allow the jury to decide intent. During the discussion of instructions, Harris's attorney requested a plea offer from the State. After further discussions, the request was denied by the State.

¶14. Later, outside the presence of the jury, the trial court made the following statement before granting a mistrial:

This case, as the attorneys well know, has raised some interesting issues. The first issue of concern is the defendant is claiming . . . that he could not form the requisite intent that is required . . . that the crime is defined as breaking and entering a building or house with the intent to commit some crime therein. Without -- if you don't have the intent to commit some crime therein, it doesn't constitute burglary. I mean it's two elements. Those elements have to be met. The Defense is arguing that because the defendant suffered from an epileptic seizure . . . they're arguing that he lacked the ability to form the requisite intent to commit the crime therein. Therefore, it can't be a burglary because he didn't have that intent. The State . . . takes exception to that argument . . . and I know the attorneys also have tried to research this fairly extensively.

The only cases that I can find from the Mississippi Supreme Court that deal with a defendant claiming epilepsy are couched in terms of the insanity defense, which makes sense, because in Mississippi, the insanity defense is the only defense available for mental disease or defect, and . . . it requires that the defendant not know the difference between right and wrong. Also, there's a procedural requirement if someone is gonna claim the insanity defense, that the State has to be put on notice of that defense prior to trial by a written notice, notice of insanity, and that's required under the rules. That did not occur here. They were not provided any notice that the defendant was claiming insanity.

Now, the Defense would argue they're not claiming insanity. They're claiming that due to the epilepsy, he was not able to form that intent. Well, that has not been the position yet of the Mississippi Supreme Court. The Mississippi Supreme Court, as I have read, . . . has discussed epilepsy within the context of insanity, and, therefore, as far as this Court is concerned, that's where it sits. It sits within the context of insanity.

The State was caught somewhat off guard by that defense, because they did not have any notice of that defense prior to coming into the courtroom today. The State has requested a mistrial on that basis, because they were caught off guard, surprised, so to speak, by the defense of epilepsy, and feel that they should have been given notice of that defense prior to trial under the insanity rules.

. . . .

In any event, the bottom line of all of this is I agree that I think the epilepsy constitutes - as I read the cases from the Supreme Court, constitutes or at least is to be discussed in the context of insanity. Insanity requires that notice be given. Notice was not given. I think that's an unfair surprise on the

State. I'm gonna grant the State's motion for a mistrial. Granted.

Defense counsel registered an objection to the trial court's decision.

¶15. In its order declaring a mistrial, the trial court acknowledged that Harris claimed that he committed the alleged acts while experiencing an epileptic seizure and "was incapable of formulating the requisite intent to commit the crime of larceny and thus could not be guilty of the crime of burglary." The trial court found, however, that

> [b]ecause virtually all of the cases found discussed epilepsy within the context of the insanity defense, this court concludes that if a defendant intends to advance such a defense - innocent by epilepsy - then such is tantamount to claiming the defense of insanity and the State is entitled to advance notice. [MRCrP] l 7.4(b) (formerly [URCCC] 9.07).

The trial court acknowledged that Mississippi Rule of Criminal Procedure 17.4 did not specifically provide for a mistrial when the defendant failed to provide such notice, although the rule granted the trial court the authority to use sanctions as it deemed proper. The trial court declared that a mistrial was necessary and proper.

¶16. During a pretrial hearing prior to the commencement of the second trial, the State argued that epilepsy required a neurological diagnosis because it related to Harris's mental state. Harris argued that epilepsy was a physical, not a mental, illness, and notice was not required under Rule 17.4. Subsequently, the trial court found that epilepsy was not tantamount to insanity. The trial court further found Harris could testify that he suffered from epilepsy and had no memory of the alleged crime. But he could not give opinion testimony as to whether his inability to remember was the result of an epileptic seizure. Such testimony would need to be given by an expert.

¶17. Based on similar testimony elicited during his second trial, the jury found Harris guilty of attempted burglary. Harris was sentenced to a term of ten years, with five years suspended.

¶18. Once on appeal and after counsel for Harris had withdrawn and new counsel had substituted, Harris moved to supplement the record and to suspend the briefing schedule, arguing that "[t]he record, as presently constituted, does not include Harris's first trial which ended in a mistrial. Review of the trial court's granting of the State's motion for mistrial is essential for undersigned counsel to fully and effectively argue Harris's case before this Court." The record subsequently was supplemented with the transcript from the first trial, and the parties were allowed to supplement their briefs based on the supplemented record.

## STATEMENT OF ISSUES

¶19. Harris raises the following two issues:

    I.    Because it was not manifestly necessary, the trial court erred by granting the State's motion for a mistrial. Because jeopardy had already attached, Harris's retrial was in violation of his right to be free from double jeopardy.

    II.    The State presented insufficient evidence to convict Harris of attempted burglary of a dwelling.

Because the first issue is dispositive, the second issue is moot.

## ANALYSIS

**I. Because it was not manifestly necessary, the trial court erred by granting the State's motion for a mistrial. Because jeopardy had already attached, Harris's retrial was in violation of his right to be free from double jeopardy.**

¶20. The rule against double jeopardy prevents the State from retrying the defendant unless the circumstances indicate there was "manifest necessity" for the court to declare a mistrial.

*Jenkins v. State*, 759 So. 2d 1229, 1234 (Miss. 2000) (internal quotation marks omitted) (quoting *Watts v. State*, 492 So. 2d 1281, 1284 (Miss. 1986)). In *Jenkins*, this Court reiterated that

> there is no simple rule or formula defining the standard of "manifest necessity" or when exceptional circumstances exist justifying a declaration of mistrial by the trial court. The question is not easily answered. There are obvious cases of manifest necessity, e. g., a hopelessly hung jury, or a tainted jury, just as this case is an obvious case where "manifest necessity" to declare a mistrial was absent. In the final analysis, the determinations must be made by the trial judge fulfilling his somber responsibility as to when justice requires him to declare a mistrial.

*Id.* at 1235 (quoting *Jones v. State*, 398 So. 2d 1312, 1318 (Miss. 1981)).

¶21.    "Whether to grant a mistrial is within the sound discretion of the trial court." *Gunn v. State*, 56 So. 3d 568, 571 (Miss. 2011) (internal quotation mark omitted) (quoting *Caston v. State*, 823 So. 2d 473, 492 (Miss. 2002)). In *Montgomery v. State*, this Court reasoned that "[t]he amount of discretion a trial court has to find manifest necessity turns on the *reason* for mistrial." *Montgomery v. State*, 253 So. 3d 305, 311 (Miss. 2018). For example, a trial court's decision to declare a mistrial because the jury is biased or deadlocked is given "broad deference." *Id.* (internal quotation marks omitted) (quoting *United States v. Fisher*, 624 F.3d 713, 718 (5th Cir. 2010)). But a mistrial declared because prosecution witnesses were unavailable must pass the "strictest scrutiny." *Id.* (internal quotation marks omitted) (quoting *Fisher*, 624 F. 3d at 718).

¶22.    In the first trial, Harris's attorney addressed Harris's epilepsy during his opening statement. Each witness was cross-examined as to Harris's medical condition at the time of his apprehension. Harris also provided extensive testimony regarding his epileptic condition.

9

Moreover, the State questioned Harris about his condition and medications. The State never timely objected to the defense's using epilepsy as a defense to intent. The only objection lodged by the State during the entire trial was that Harris failed to provide an alibi defense.

¶23. Rule 17.4 of the Mississippi Rules of Criminal Procedure reads in pertinent part that

> Upon the written demand of the prosecuting attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten (10) days, or at such other time as the court may direct, upon the prosecuting attorney, a written notice of the intention to offer a defense of alibi, which *notice shall state the specific place(s) at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.*

MRCRP 17.4(a)(1) (emphasis added). Our alibi rule is narrowly tailored to a defendant's being in another place, other than the scene of the crime, at the time the alleged crime occurred. This rule does not require a defendant to give notice of using a medical condition such as epilepsy as a defense to intent. Rule 17.4(b)(1) does require a defendant to provide notice of the defense of insanity. In today's case, neither alibi nor insanity was at issue, and Harris was not required to put the State on notice of his intent to use epilepsy as a defense.

¶24. Moreover, Rule 17.4(b)(1) further provides

> If a defendant intends to introduce *expert testimony relating to a mental illness, defect, or other condition* bearing upon the issue of whether the defendant had the mental state required for the offense charged, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, serve upon the prosecuting attorney and the clerk of the court *notice of such intention*, with the names and addresses of such *expert witnesses* upon whom the defendant intends to rely.

MRCrP 17.4(b)(1) (emphasis added). Had Harris sought to present expert testimony that he suffered from epilepsy, Harris would have been required to provide the State with notice of

10

that expert. Here, Harris did not rely on any expert testimony regarding his lack of intent. Harris simply testified as to his own condition and lack of knowledge of the incident in question.

¶25.    The trial court initially granted the mistrial, finding that the State was not given notice of an insanity defense by Harris. Harris specifically stated that he was not asserting an insanity defense and was not seeking an insanity instruction. Although the trial court acknowledged prior to the second trial that epilepsy was not tantamount to insanity and allowed Harris to testify in the second trial, as he did in the first trial, that he suffered from epilepsy, double jeopardy had attached at the beginning of the first trial.

¶26.    The United States Supreme Court has said "if [the trial judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.'" *Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 832, 54 L. Ed. 2d 717 (1978). This is what occurred here. Harris was not required to provide notice to the State regarding his use of epilepsy as a defense. The mistrial at the conclusion of the testimony was not manifestly necessary. By discharging the jury after all testimony was heard, Harris was deprived of his "valued right to have his trial completed by a particular tribunal." *Id.* (internal quotation marks omitted).

## CONCLUSION

¶27.    We find that no manifest necessity existed to support the trial court's grant of mistrial. Harris's double jeopardy rights were violated by his second trial and conviction. We reverse Harris's conviction and render judgment in his favor.

11

¶28.	**REVERSED AND RENDERED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**